IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| PATRICIO JARA, | ) |
|     Plaintiff, | ) Case No. _____ |
| | ) |
| | ) JURY DEMAND |
| v. | ) |
| | ) |
| TENNESSEE STATE UNIVERSITY, | ) |
| | ) |
|     Defendant. | ) |

## COMPLAINT

1. This lawsuit arises under the Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et seq. ("Title VII"), Title VI of the Civil Rights Act of 1964, and 42 U.S.C. § 1981, et. seq. against Tennessee State University on behalf of Dr. Patricio Jara as a result of Defendant's discriminatory, retaliatory and hostile conduct in violation of Dr. Jara's civil rights.

## JURISDICTION AND VENUE

2. This court has subject matter jurisdiction in this matter pursuant to 42 U.S.C. §2000e-5(f) and 28 U.S.C. § 1331 and 1345. Venue is proper in this judicial district under 42 U.S.C. §2000e-5(f) and 28 U.S.C. § 1391(b) because Nashville, Tennessee, is where a substantial part of the events or omissions giving rise to the cause of action herein occurred.

3. Defendant is a "person" within the meaning of 42 U.S.C. §2000e(a) and an employer within the meaning of 42 U.S.C. §2000e(b).

4. Defendant, whose main office is location on 3500 John A. Merritt Boulevard, Nashville, TN, 37219, is a state-chartered corporation and institution engaged in the business of higher-education, which is located in Nashville, Tennessee.

5. Defendant receives federal financial assistance within the meaning of Title VI of the Civil Rights Act of 1964.

6. The Equal Employment Opportunity Commission ("EEOC") and, later, the Department of Labor, received a timely charge and all conditions precedent to the filing of suit have been performed or have occurred.

# FACTUAL ALLEGATIONS

7.      Dr. Jara is a tenured professor at Tennessee State University ("TSU"), a native of Chile and an American citizen.

8.      Dr. Jara has worked for TSU for approximately one decade.

9.      In January of 2017, Tennessee State University sent out an email notifying professors that an Oral English Proficiency (OEP) Screening that was required to be completed by all new or adjunct Faculty for the Spring 2017 Semester.

10.     On January 24, 2017, Interim Dean Sharpe threatened Dr. Jara's job because he "did not like Dr. Jara's signature" that he signed on his January 2017 Time-sheet. Specifically, Interim Dean Sharpe claimed that it was either not a "proper signature" or that Dr. Jara didn't actually sign it and that he would not get paid unless he signed the timesheet. Dr. Jara informed Interim Dean Sharpe that he did, in fact, sign the timesheet and that the signature was his.

11.     On January 25, 2017, Dr. Jara reported the harassment to Dr. Mark Hardy, Vice-President of Academic Affairs.

12.     On January 29, 2017, Dr. Jara applied for the Department Chair Position at the Mathematical Sciences Department of TSU.

13.     Interim Chair Jeanetta Jackson did not inform the Department Faculty that the position was open before the application period for the position expired, though Dr. Jara discovered that the position was open via the TSU websits.

14.     Interim Chair Jeanetta Jackson was appointed to be the Chair of the Search Committee for the Department's Chair Position by Interim Dean Sharpe.

15.     In early February of 2017, Interim Dean Sharpe doctored the time reported for Dr. Jara in his February 2017 HR Time sheet by whiting out the reported time.

16.     On February 15, 2017, Dr. Jara submitted a Discrimination and Harassment complaint to the TSU Office of Equal Opportunity and Affirmative Action against Dean Sharpe.

17.     On February 23, 2017, Dr. Jara met with Mrs. Williams-Seay in her EOAA office. Afterward, Dr. Jara emailed Mrs. Williams-Seay with a copy of the HR time-sheet of February 2017 that was doctored by Dr. Sharpe.

18.     On March 1, 2017, Dr. Jara submitted a Complaint Form to the Department of Human Resources showing the doctored February 2017 HR Time Certification Sheet due February 16, 2017.

19.     On March 2, 2017, Mrs. Williams-Seay, TSU EOAA office, emailed Dr. Jara and said, in part, "... we are unable to investigate your complaint."

20. On March 27, 2017, Interim Dean Sharpe stated in an email that "If your time sheets are not signed today, you will not get paid."

21. In the meantime, Dr. Jara continued to teach his classes and work the required hours.

22. On March 27, 2017, sent an email to Linda Spears, HR Director, mentioning, in part, that "... I have asked Dr. Sharpe repeatedly. However, he decided to literally threaten me instead of explaining to me the contents of the document."

23. On March 30, 2017, Mrs. Spears instructs Mrs. Trushel (Department's Administrative Assistant) to explain to Dr. Jara the meaning of the HR Time Sheet and how to fill it out.

24. Throughout April of 2017, numerous emails were sent that addressed Dr. Jara submitting a "proper signature" on his timesheet.

25. Tennessee State University withheld pay from Dr. Jara due to him allegedly not having a correct signature, despite Dr. Jara actually signing his timesheets.

26. On April 18, 2017, Dr. Jara submits a formal retaliation complaint to the TSU Human Resources office because Interim Dean Sharpe and Interim Chair Jackson do not want to accept Dr. Jara's legally binding signature.

27. That month, significant concerns about the search process for the new Department Chair were discussed within the department.

28. Candidates invited by the Search committee did not include the applicants with the most research publications or grants.

29. One of the candidates chosen by the Search Committee presented two definitions, an unproven statement and an example which did not include any original results.

30. Another candidate presented slides were not even original but copied and pasted from other sources. He also stated that he had performed no research related to mathematics.

31. Meanwhile, Dr. Jara, who was significantly qualified, received no notification that his application was even sent in and was passed up for even an interview.

32. On October 24, 2017, Interim Dean Sharpe requested that Dr. Jara and other faculty participate in an Oral English Proficiency (OEP) Screening Program which asked for country of origin, native language/dialect, and the length of time they have lived in the United States.

33. That day, Dr. Jara emailed Dr. McMurray to express his concerns and his belief that xenophobic policies were coming out of the College of Life and Sciences.

34. On October 27, 2017, Dr. McMurray refused to answer Dr. Jara's questions concerning whether the Interim Dean's Proficiency Screening Program was mandatory.

35. Throughout late 2017, Dr. Jara continued to be harassed with regards to his signature on his timesheet.

36. In January of 2018, having continually been harassed, Dr. Jara emailed McMurray the definition of a signature in the Tennessee Code Annotated § 47-3-401 which states "A signature may be made (i) manually or by means of a device or machine, and (ii) by the use of any name, including a trade or assumed name, or by a word, mark, or symbol executed or adopted by a person with present intention to authenticate a writing".

37. On February 5, 2018, Dr. Jara emailed Dr. Glenda Glover, President of Tennessee State University, informing her of the abuses and harassment to which he was subjected.

38. In March of 2018, Dr. Jara sent an email to the 2017-2018 Faculty Search Committee asking if a certain African-America candidate for a faculty position was the same candidate that applied the previous year and listed grants for which he was not the Principal Investigator or Co-Principal Investigator.

39. On September 5, 2018, Interim Dean Sharpe and Department Chair McMurray visited a course of Dr. Jara's and told students that, if they had complaints, they should complain directly to the Dean, Chair, or Student Success Center Director instead of Dr. Jara because, "You do not know what may happen later on down the road."

40. On November 12, 2018, Dr. Jara requested both Interim Dean Sharpe and Chair McMurray for a letter of support for a Mini-Grant Application with a faculty member at Fisk University.

41. Dr. McMurray completely ignored the request while Sharpe provided a letter of support.

42. On February 27, 2019, Dr. Jara emailed faculty about hostile work environment and provided examples.

43. On April 16, 2019, the TSU Office of Equity and Inclusion emailed Dr. Jara informing him that his case concerning discrimination and retaliation was still open.

44. In May of 2019, Dr. Jara reported mistakes in a Pre-Calculus I Common Final Exam to Chair McMurray and carbon copied other instructors, the Interim Dean and Interim Vice-President of Academic Affairs.

45. Dr. McMurray ridiculed Dr. Jara for reporting the mistakes on multiple occasions yet never corrected the mistakes.

46. On June 13, 2019, President Glover sent an email notifying professors that the University's accreditation was put on probation by the accreditation agency SACSCOC.

47. In August of 2019, President Glover charged all faculty to participate in a plan of action to satisfy SACSCOC requirements concerning probation with meetings on Friday August 16, 2019.

48. On November 7, 2019, Dr. Jara requested both Interim Dean Sharpe and Chair McMurray for a letter of support for a Mini-Grant Application with a Faculty of Fisk University. Neither one provided a letter of support.

49. Dr. Jara and other foreign-born professors in the Mathematics Department were not invited to participate in the re-accreditation of the Mathematics Sciences Program, although native born professors with similar or less experience were invited to participate.

50. Dr. Jara and other foreign-born professors in the Mathematics Department are given more credit hours to teach in comparison to native born professors with similar or even less experience.

51. Collective Exhibit A (attached) are charts that accurately reflect the credit hours assigned to Mathematics Professors during the Spring 2020 Semester and, respectively, the number of students taught.

52. Dr. Jara and other foreign-born professors in the Mathematics Department are given less pay in comparison to native born professors with similar or even less experience.

COUNT ONE:
TITLE VII, 42 U.S.C. §2000e-2(a)
Discrimination and Hostile Work Environment Due to National Origin

53. Plaintiff re-alleges and incorporated by reference the allegations set forth in paragraphs 1-52 above.

54. Defendant's discriminatory actions and practices constituted a hostile work environment.

55. Defendant discriminated against Plaintiff due to his national origin by giving him and other similarly situated individuals significantly more credit hours to teach in comparison to professors in his department who were born in America.

56. Defendant discriminated against Plaintiff due to his national origin by giving him and other similarly situated individuals less pay in comparison to professors in his department who were born in America.

57. Plaintiff was not even interviewed for his Department Chair position despite having significantly better qualifications than other individuals who applied and the African-American professor who received the position.

COUNT TWO:
TITLE VII, 42 U.S.C. §2000e-3(a)
Retaliation for Engaging in Protected Activity

58. Plaintiff re-alleges and incorporated by reference the allegations set forth in paragraphs 1-57 above.

59. Plaintiff engaged in protected activity when he complained about discrimination and harassment based on national origin, race and color.

60. There was a causal connection between the Plaintiff's complaint and the materially adverse actions taken against him.

61. The retaliation endured by Plaintiff would dissuade a reasonable employee from making complaints of discrimination and harassment.

## COUNT THREE:
## TITLE VI of the Civil Rights Act of 1964, 42 U.S.C. §2000d et. seq.

62. Plaintiff re-alleges and incorporated by reference the allegations set forth in paragraphs 1-61 above.

63. Defendants, themselves and/or by and through their employees and/or agents, created a pervasive hostile and discriminatory educational environment for Plaintiff based upon his national origin, race and/or color, in violation of Title VI of the Civil Rights Act of 1946, 42 U.S.C. § 2000d et. seq.

64. Defendants, themselves and/or by and through their employees and/or agents, retaliated against Plaintiff for lodging complaints with the TSU administration, in violation of Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d et. seq.

65. Plaintiff was not even interviewed for his Department Chair position despite having significantly better qualifications than others who applied and the individual who received the position.

## COUNT FOUR:
## RACE DISCRIMINATION UNDER 42 U.S.C. SECTION 1981

66. Plaintiff re-alleges and incorporated by reference the allegations set forth in paragraphs 1-65 above.

67. Defendant discriminated against Plaintiff by denying him benefits, privileges, terms and conditions of his employment due to his national origin, race and/or ethic characteristics.

68. Defendant's conduct has been intentional, deliberate, willful and in callous disregard of Plaintiff's rights.

69. As a result of its conduct, which was willful, malicious and outrageous, Defendant is liable for punitive damages.

PRAYER FOR RELIEF

For these reasons, Plaintiff prays that the Court grants the following relief:

a. Enjoin Defendant from subjecting employees to discrimination or harassment based on national origin and/or race or color and require similar treatment of all similarly situated current mathematics professors at TSU with regards to credit hours assigned and pay in a manner that does not take into account national origin or ethnicity;

b. Award compensatory damages to Plaintiff for his injuries, including but not limited to back pay and front pay, and the difference in pay with regards to the Chair position he should have received;

c. Reasonable attorney's fees, costs, and expenses of this action;

d. Such other and further relief to which Plaintiff may be entitled, at law or in equity, including punitive damages and pre and post judgment interest;

e. Any and all other relief that this Court may deem just and proper to adequately compensate Plaintiff for his injuries; and

f. That this matter be heard by a jury.

Respectfully Submitted,

/s Robert C. Bigelow, Esq.

Robert C. Bigelow, Esq. #022022
Bigelow Legal, P.C.
4235 Hillsboro Pike, Suite 217
Nashville, TN 37215
(615) 829-8986
rbigelow@bigelowlegal.com