IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

PATRICIO JARA,                          )
                                        )
    Plaintiff,                     )
                                        )        NO. 3:20-cv-00131
v.                                      )        JUDGE RICHARDSON
                                        )
TENNESSEE STATE UNIVERSITY,             )
                                        )
    Defendant.                     )

## MEMORANDUM OPINION

Pending before the Court is Defendant's motion for summary judgment (Doc. No. 26, "Motion"). Plaintiff responded to the Motion. (Doc. No. 31). Defendant replied. (Doc. No. 33). The Motion is ripe for review.

For the reasons discussed herein, the Motion will be granted in part and denied in part.

## FACTUAL BACKGROUND[1]

Plaintiff is a native of Chile and an American citizen. (Doc. No. 31-9 at ¶ 1). He is a tenured professor at Tennessee State University ("Defendant" or "TSU") and has worked there for

_____

[1] Unless otherwise noted, the facts in this section are (a) taken from facts in Plaintiff's Response to Defendant's Statements of Undisputed Material Facts (Doc. No. 31-9) and Defendant's Response to Plaintiff's Concise Statement of Additional Material Facts (Doc. No. 32); and are (b) undisputed. The facts set forth herein are either undisputed or specifically identified as disputed. Additionally, the Court relies on some facts in this Opinion as laid out in Plaintiff's briefing. Defendant has not contested any of these facts, and, from the record, they do not appear to be in dispute. Therefore, when relevant, the Court has included these facts.

Plaintiff additionally offers evidence related to his attempt to settle this matter with Defendant. This evidence appears to be both irrelevant and otherwise inappropriate under the Federal Rules of Evidence. Fed. R. Evid. 408; *S. Ry. Co. v. Madden*, 235 F.2d 198, 201 (4th Cir. 1956) ("It is too well settled for argument that evidence of unaccepted offers of compromise or negotiations looking to compromise is inadmissible."); *Cheyenne River Sioux Tribe v. United States*, 806 F.2d 1046, 1050 (Fed. Cir. 1986) ("An unaccepted offer of settlement ordinarily is not admissible evidence to show either the existence or amount of liability.").

approximately one decade. (*Id.* at ¶¶ 1-2). Plaintiff was awarded academic tenure in 2015 and was promoted to Associate Professor in the Department of Physics and Mathematics. (*Id.* at ¶ 3). Plaintiff received multiple salary increases while working for Defendant from 2016 to 2019. (*Id.* at ¶ 4).

Plaintiff applied to be the Department Chair of Physics and Mathematics in April 2017, and his application was denied. (Doc. No. 31 at 5). Plaintiff was not selected as one of the three finalists for the position. (Doc. No. 32 at ¶¶ 3, 5). The Job Announcement stated under the headings "Minimum Qualifications/Experience" and "Required Education—Experience—Skills (Minimum Qualifications)":

> The successful candidate must have an earned doctorate (or the foreign equivalent or its equivalent in training, ability, and/or experience) in Mathematics or a closely related field and have sufficient experience and achievement to qualify for the rank of Professor. The successful candidate will have a record of scholarship and research that includes peer-reviewed publications and securing external funding. The candidate should provide evidence of effective leadership experience, exceptional communication and interpersonal skills, and an ability to work productively with faculty and students from diverse backgrounds.

(Doc. No. 29-16 at 3).

The individual who received the job, Dr. McMurray, is an African American individual. (Doc. No. 31-9 at ¶ 36). On his curriculum vitae ("CV"), Dr. McMurray did not indicate ever having received any grants even though a record of securing external funding was a requirement for the position. (Doc. No. 31 at 5; Doc. No. 31-9 at ¶ 21). Dr. McMurray[2] testified at his deposition that this was an oversight on his resume and that he did receive a three or four-thousand dollar grant sometime around 2003. (Doc. No. 31-9 at ¶ 21). Additionally, another finalist for the position

---

[2] There appears to be a typographical error in Defendant's Response to Plaintiff's Statements of Facts. Defendant says, "Dr. McNeely testified at deposition that omission was an oversight on his resume." (Doc. No. 32 at ¶ 4). This is the first and only mention of Dr. McNeely in that document, and the Court takes Defendant to have been referring actually to Dr. McMurray.

was an African American who had a degree in agriculture, instead of mathematics or a related field. (Doc. No. 32 at ¶ 5).

Dr. McMurray had previously served as an Associate Director, Department Head, and Department Chair at other higher education institutions. (Doc. No. 31-9 at ¶ 32). Defendant's decision to hire Dr. McMurray was based in part on this previous experience as a Department Chair, as well as other leadership and administrative roles. (*Id.* at ¶ 37). Plaintiff had never served as a Department Chair or Department Head. (*Id.* at ¶ 9).

Plaintiff complains not only of the decision to not promote him, but also of various incidents that occurred during his employment. In October 2017, a dean employed by Defendant asked some professors to take an "Oral English Proficiency" test which asked about the professors' country of origin, native language/dialect, and the length of time having lived in the United States. (*Id.* at ¶ 6; Doc. No. 32 at ¶ 6). All faculty in the College of Life and Physical Sciences were asked to participate in this exam. (Doc. No. 31-9 at ¶ 34). No penalty or adverse action was taken towards the faculty who did not participate.[3] (*Id.* at ¶ 35). Also in 2017,[4] Plaintiff was harassed about how he signed his timesheets, and his pay was withheld. (*Id.* at ¶ 7; Doc. No. 32 at ¶ 1).

In 2017 and 2018, Plaintiff filed multiple complaints with Defendant's Equal Employment Opportunity Office ("EEO Office") and with Defendant's superiors and administrators. (*Id.* at ¶ 7). After lodging these complaints, Plaintiff was subjected to various actions:

---

[3] Plaintiff denies this fact but provides no additional details or citation to the record to support his denial. Therefore, the Court deems this fact undisputed for purposes of ruling on the present Motion.

[4] The record is unclear regarding when the issues with the timesheets stopped, with Plaintiff indicating that they extended "beyond 2017" but that he could not remember when the issues stopped. (Doc. No. 31-9 at ¶ 7; Doc. No. 31-4 at 1).

- Plaintiff was the only professor in his department no longer allowed to teach upper-level courses;

- Plaintiff was removed from the department's curriculum committee;

- Plaintiff was given other committee assignments;

- Plaintiff was not provided with a standard letter of support from a supervisor to help him receive a grant;

- Plaintiff was openly called names such as "incompetent" and "a disgrace" in emails to the faculty;[5]

- Plaintiff was falsely accused of giving students answers to final exams in advance;

- Plaintiff was screamed at, intimidated, and threatened;[6]

- An instructor was sent to sit in on Plaintiff's classes for a semester, and Plaintiff was given an evaluation by the instructor;

- Plaintiff was told that there were student complaints about him but was not given access to these complaints.

(Doc. No. 32 at ¶ 8).[7] Plaintiff believed his work environment was so hostile that he purchased a

body camera in 2018 to record instances of harassment. (*Id.* at ¶ 9).

---

[5] The Court perceives nothing in the record reflecting who sent these emails.

[6] The Court perceives noting in the record reflecting who accosted Plaintiff in this manner.

[7] Defendant admits that the occurrence of some of these events (alleged to have occurred by Plaintiff in Doc. No. 31-10, paragraph 8) is undisputed. (Doc. No. 32 at 3). But as to the occurrence of other of these events, Defendant purports to admit only that it is undisputed "that Plaintiff so states," *i.e.*, that Plaintiff claims that they occurred. (Doc. No. 32 at 2–4). Such an answer fails to cut the metaphorical mustard. Plaintiff's Concise Statement of Additional Material Facts (Doc. No. 24) posited that *these events occurred*, not that Plaintiff *claims* that these events occurred. Defendant did not dispute that any of these events occurred, inasmuch as its responses to the effect that it admits only that Plaintiff "states" that these events occurred do not constitute a disputation that such events occurred. Given that no dispute has been raised as to the occurrence of any of these events, they are deemed undisputed at least for purposes of the Motion.

The Court notes below another context in which Defendant took the ill-advised approach of responding to a statement purported by Plaintiff (in Doc. No. 32-10) to be true by admitting only that it was undisputed that "Plaintiff so states." In this other context also, Defendant will be

After filing these formal complaints with the EEO Office in 2017 and 2018, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") (as opposed to the EEO Office on TSU's campus) which was received by the EEOC on November 5, 2018. (Doc. No. 31-9 at ¶ 33; Doc. No. 29-2 at 2). The charge referenced various instances of discrimination due to national origin, including: failure to promote, the Oral English Proficiency exam, his signature on time sheets (and the subsequent withholding of his paycheck), class scheduling and hours, and how others spoke to him. (Doc. No. 29-2 at 2). Plaintiff also referenced his previous complaints to the EEO Office, noting that he had made three written complaints to Human Resources, complaints to the Vice President of Academic Affairs, and an email to the President of the University. (*Id.*). On the charge, Plaintiff checked the boxes for "national origin" discrimination and for "continuing action" (instead of a precise date the events occurred). (*Id.*).

In Plaintiff's Concise Statement of Additional Material Facts (Doc. No. 31-10), Plaintiff asserted facts indicating that, in general, non-American born professors are treated worse than American-born professors. In particular, citing his own affidavit filed in opposition to the Motion (Doc. No. 31-4), Plaintiff asserted that American professors in the department of math and physics are assigned to teach significantly fewer classes and class hours than non-American born professors, allowing them more time to have leadership positions and apply for grants. (Doc. No. 31-10 at ¶ 10). Again, citing his affidavit, Plaintiff also asserted that it was undisputed that non-American born professors are not given important leadership or committee positions. (*Id.* at ¶ 11). In response, Defendant admitted only that "Plaintiff so states,", *i.e.*, that Plaintiff claims in his affidavit these things to be true. (Doc. No. 32 at ¶¶ 10-11). But as discussed in a footnote above,

---

deemed to have admitted the statement that he declined to dispute based on the unwise choice to make the unhelpful observation that it is "undisputed" that Plaintiff states what he states.

by failing to dispute the truth of what Plaintiff states, Defendant is deemed to have admitted the truth of what Plaintiff states and not merely that (as is obvious in any event) Plaintiff states what he states. Defendant also stated in response: "Plaintiff admitted at deposition that he did not know where all the professors in his department were born." (Doc. No. 32 at ¶¶ 10–11). In pointing out this admission, Defendant did *not* deny the facts asserted by Plaintiff; it could be true both that (as conceivably Plaintiff's counsel's investigation could have revealed or conceivably Plaintiff could have intuited based on the knowledge of where *most* professors were born) American-born professors were given better treatment *and* that Plaintiff did not *personally* know, as to *all* professors (every single professor) whether they were American-born or not. So the facts asserted by Plaintiff are, as noted, deemed admitted. This may seem a harsh result for Defendant, but the ultimate impact of this result is mitigated somewhat by the precise nature of the facts deemed admitted by Defendant; they do not include anything about *why* American professors were treated better.

In the Complaint, Plaintiff brings four counts, which the Court will discuss in some detail below. (Doc. No. 1).

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). In other words, even if genuine, a factual dispute that is irrelevant or unnecessary under applicable law is of no value in defeating a motion for summary judgment. *See id.* at 248.

On the other hand, "summary judgment will not lie if the dispute about a material fact is 'genuine[.]'" *Id.*

A fact is "material" within the meaning of Rule 56(c) "if its proof or disproof might affect the outcome of the suit under the governing substantive law." *Anderson*, 477 U.S. at 248. A genuine dispute of material fact exists if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Harris v. Klare*, 902 F.3d 630, 634-35 (6th Cir. 2018).

The party bringing the summary judgment motion has the initial burden of identifying portions of the record that demonstrate the absence of a genuine dispute over material facts. *Pittman v. Experian Information Solutions, Inc.*, 901 F.3d 619, 627-28 (6th Cir. 2018). If the summary judgment movant meets that burden, then in response the non-moving party must set forth specific facts showing that there is a genuine issue for trial. *Id*. at 628.

A party asserting that a fact cannot be or genuinely is disputed—*i.e.*, a party seeking summary judgment and a party opposing summary judgment, respectively—must support the assertion by citing to materials in the record, including, but not limited to, depositions, documents, affidavits or declarations. Fed. R. Civ. P. 56(c)(1)(A). In reviewing a motion for summary judgment, this court must view the evidence in the light most favorable to the non-moving party. *Tlapanco v. Elges*, 969 F.3d 638, 647 (6th Cir. 2020) (quoting *Anderson*, 477 U.S. at 248). Likewise, the court should view the facts and draw all reasonable inferences in favor of the non-moving party. *Pittman*, 901 F.3d at 628. Credibility judgments and weighing of evidence are improper. *Hostettler v. College of Wooster*, 895 F.3d 844, 852 (6th Cir. 2018). As noted above, where there is a genuine dispute as to any material fact, summary judgment is not appropriate. *Id*. The court determines whether sufficient evidence has been presented to make the issue of fact a proper jury question. *Id*. The mere existence of a scintilla of evidence in support of the non-moving

party's position will be insufficient to survive summary judgment; rather, there must be evidence upon which the jury could reasonably find for the non-moving party. *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003).

On a motion for summary judgment, a party may object that the supporting materials specified by its opponent "cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). Upon such an objection, the proponent of the supporting material must show that the material is admissible as presented or explain how it could be presented in a form that would be admissible. *Thomas v. Haslam*, 303 F. Supp. 3d 585, 624 (M.D. Tenn. 2018); *Mangum v. Repp*, 2017 WL 57792 at *5 (6th Cir. Jan. 5, 2017) (citing Fed. R. Civ. P. 56(c) advisory committee's note to 2010 amendment).

## DISCUSSION

The Court will first discuss what claims Plaintiff brings in his Complaint. The Court will then discuss evidentiary issues raised by Defendant in its Reply. Next, the Court will discuss Defendant's arguments regarding timeliness. Finally, the Court will discuss in turn each count that Defendant has addressed.

### A.      Plaintiff's claims

#### 1.      *Differences between race, national origin, and color claims*

As will be discussed, at different points in his Complaint, Plaintiff makes references to his color, national origin/ethnicity, and race. These are three separate and distinct types of claims under the relevant statutes. A plaintiff must (assuming the burden has shifted to it as the non-movant) show sufficient direct or indirect evidence specific as to each type of claim in order to survive summary judgment. *Burrage v. FedEx Freight, Inc.*, No. 4:10CV2755, 2012 WL 1068794, at *6 (N.D. Ohio Mar. 29, 2012) ("[I]t does not follow that comments supporting one type of

discrimination can provide the sole support for a claim for a separate and distinct form of discrimination.").

"[R]ace and national origin are ideologically distinct under Title VII." *Id.* at *7 (quoting *Kun v. Finnegan, Henderson, Farabow, Garrett & Dunner*, 949 F. Supp. 13, 19 (D.D.C. 1996)). Instead of one's racial identity, "[t]he term 'national origin' on its face refers to the country where a person was born, or, more broadly, the country from which his or her ancestors came." *Id.* "The legislative history [of Title VII] enunciates precisely that a person's national origin has nothing to do with color, religion, or race." *Id.* (quoting *Roach v. Dresser Indus. Valve & Instrument Div.*, 494 F. Supp. 215, 216 (W.D. La. 1990)).[8] Notably, "Section 1981 prohibits discrimination on the basis of race but not discrimination on the basis of national origin." *Kostic v. United Parcel Serv., Inc.*, No. 3:18-CV-00556, 2021 WL 1213409, at *3 (M.D. Tenn. Mar. 31, 2021) (Richardson, J.) (citing *Saint Francis College v. Al–Khazraji*, 481 U.S. 604, 613 (1987) and *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001) ("The Supreme Court has held in *Saint Francis College* that only claims of racial, as opposed to national origin, discrimination are cognizable under § 1981.")).

Courts are clear that a color discrimination claim is separate from a race or national origin discrimination claim. "[C]olor discrimination is distinct from race discrimination in that the former 'arises when the particular hue of the plaintiff's skin is the cause of the discrimination, such as in the case where a dark-colored African-American individual is discriminated against in favor of a

---

[8] In some cases, national origin and race "are so intertwined that it is difficult to separate the two for purposes of analysis; such as in the case where an employee believes that he has been subjected to discrimination but he cannot determine whether it can be traced to a personal characteristic common to people of a certain national origin or his national origin, itself." *Kun*, 949 F. Supp. at 19. But the current case does not appear to involve any such intertwining. Plaintiff identifies in each of his claims whether he is bringing such claim based on race, national origin, or both. Plaintiff does not assert that his national origin and race discrimination claims are so intertwined that they cannot be separated nor does he claim that he cannot determine whether he was discriminated against based on his Chilean origin or based on his Hispanic race.

light-colored African-American individual.'" *Moore v. Food Lion*, No. 306-0712, 2007 WL 596955, at *2 (M.D. Tenn. Feb. 21, 2007) (quoting *Bryan v. Bell Atlantic Maryland, Inc.*, 298 F.3d 124, 133 n. 5 (4th Cir. 2002)); *see also Payne v. Lucite Int'l*, No. 13-2948-STA-TMP, 2014 WL 2826343, at *3 (W.D. Tenn. June 23, 2014). As one court explained, the EEOC Compliance Manual indicates that:

> Title VII prohibits employment discrimination because of "color" as a basis separately listed in the statute. The statute does not define "color." The courts and the Commission read "color" to have its commonly understood meaning—pigmentation, complexion, or skin shade or tone. Thus, color discrimination occurs when a person is discriminated against based on the lightness, darkness, or other color characteristic of the person. Even though race and color clearly overlap, they are not synonymous. Thus, color discrimination can occur between persons of different races or ethnicities, or between persons of the same race or ethnicity.

*Cooper v. Jackson-Madison Cty. Gen. Hosp. Dist.*, 742 F. Supp. 2d 941, 950–51 (W.D. Tenn. 2010) (quoting from and discussing the EEOC's guidance).

### 2. *Plaintiff's counts*

The Court needs next to determine what claims Plaintiff pleads in his Complaint, because the Complaint itself and the parties' briefing are at times unclear on this.

#### a. Count I

Count I of the Complaint asserts a claim for discrimination (what the Court will call "general discrimination," *i.e.*, *one or more* discrete acts of discrimination, to distinguish it from "hostile work environment," a different kind of discrimination)[9] and a claim for hostile work

---

[9] One district court in this circuit concisely explained the separateness of these two theories, and the importance of pleading them separately, as follows:

> A hostile work environment claim is a distinct theory of discrimination. *See National R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 115 (2002) ("Hostile environment claims are different in kind from discrete acts [of discrimination or retaliation].") As such, it should be pleaded separately under Rule 10(b) of the Federal Rules of Civil Procedure. *See, e.g., Harris v. Radioshack Corp.,* 2002 WL

environment under Title VII, citing only Plaintiff's national origin. Though Plaintiff specifically references a hostile work environment claim (which, as noted, appears to be based on national origin),[10] Defendant does not address this claim in its brief, other than merely to mention that the claim was brought. (Doc. No. 27 at 2). Therefore, Defendant has not shifted the burden to Plaintiff on any element[11] of a hostile work environment claim, and the Court will deny summary judgment to Defendant on this claim.

---

1907569, at *2 (S.D. Fla.2002) ("If Plaintiff desires to assert discrimination claims under various theories, these claims must be asserted in separate counts in accordance with Fed. R. Civ .P. 10(b).").

*Smith v. Glenny Glass Co.*, No. 106CV638, 2007 WL 1202713, at *4 (S.D. Ohio Apr. 20, 2007).

[10] A plaintiff must "tie the alleged . . . hostile work environment to [a] protected class[.]" *Land v. S. States Coop., Inc.*, 740 F. App'x 845, 850 (6th Cir. 2018). In other words, the "hostil[ity]" of the environment must be directed at or implicate members of (or membership in) a protected class.

[11] A plaintiff must establish five elements for a hostile work environment claim: 1) the plaintiff is a member of a protected class; 2) the plaintiff was subjected to unwelcomed racial harassment; 3) the harassment was based on race; 4) the harassment created a hostile work environment; and 5) the existence of employer liability. *Hafford v. Seidner*, 183 F.3d 506, 512 (6th Cir. 1999); *Pendleton*, 2016 WL 2927983, at *10. "When the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment, Title VII is violated." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (internal quotation marks and citations omitted). The harassment must be both objective and subjectively offensive to constitute a Title VII violation. *Id.* at 21-22. When looking at a hostile work environment claim, a court should employ a totality of the circumstances test. *Williams v. Gen. Motors Corp.*, 187 F.3d 553, 562 (6th Cir. 1999) (discussing *Harris*). "A court determines whether a hostile work environment has been created 'by looking at all the circumstances . . . includ[ing] the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Bradley v. Arwood*, 705 F. App'x 411, 422 (6th Cir. 2017) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)). "Whether conduct is severe or pervasive is 'quintessentially a question of fact.'" *Jordan v. City of Cleveland*, 464 F.3d 584, 597 (6th Cir. 2006) (*O'Shea v. Yellow Tech. Servs., Inc.*, 185 F.3d 1093, 1098 (10th Cir. 1999)). The fact intensive nature makes "the severity and pervasiveness evaluation . . . particularly unsuited for summary judgment." *O'Shea*, 185 F.3d at 1098.

Plaintiff argues that there is a genuine dispute of material fact regarding his hostile work environment claims. He argues:

b. Count II

Count II asserts a claim for retaliation under Title VII, alleging retaliation in response to Plaintiff's complaints about his "national origin, race and color" (though, as noted, the discrimination claim mentions only Plaintiff's national origin). (Doc. No. 1 at ¶ 59). As this Court previously has explained:

> Title VII prohibits retaliation by an employer against an employee who has either: (1) "opposed any practice made an unlawful employment practice by this subchapter," or (2) "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). These two provisions are referred to as the "opposition" clause and the "participation" clause, respectively.

*Azbell v. Wilkie*, No. 3:15-CV-00983, 2019 WL 4887199, at *2 (M.D. Tenn. Oct. 3, 2019). An employee is said to have engaged in "protected conduct" (or "protected activity") if he or she engaged in the conduct (the "oppos[ition]") reflected in the opposition clause or engaged in the conduct (the "participat[ion]") reflected in the participation clause.

In the Complaint, Plaintiff calls his claim one for "retaliation" and indicates that he is bringing his claim based on an adverse action. (*Id.* at ¶ 60). In briefing, Plaintiff makes arguments

---

As previously noted, [Plaintiff] continued to be harassed with regards to his signature on his timesheets. In the past few years, he was the only professor not allowed to teach higher level courses, denied standard things such as letters to help him get grants, called names such as "incompetent" and "a disgrace" in emails to the faculty, accused of giving students answer to final exams in advance, screamed at, intimidated/threatened, removed from the curriculum committee and not given other committee assignments, and forced to teach lower level courses. In fact, things got so bad that [Plaintiff] had to acquire a body camera to record instances of harassment. These actions amount [to] significantly more than a "mere offensive utterance" and clearly interfered with [Plaintiff's] work performance.

(Doc. No. 31 at 11-12). However, as noted, Defendant has not shifted the burden on this claim (by showing preliminarily, subject to Plaintiff's rebuttal, the absence of a genuine issue of material fact), or addressed any of the relevant legal principles, and so Plaintiff actually is not required to show the existence of a genuine issue of material fact on this claim for it to survive the Motion.

regarding alleged adverse actions including a "retaliatory hostile work environment." (Doc. No. 31 at 13-14). The Sixth Circuit has found that "a retaliatory hostile work environment claim [is] a variety of retaliation." *Khamati v. Sec'y of Dep't of the Treasury*, 557 F. App'x 434, 443 (6th Cir. 2014). The Sixth Circuit has also explained that a *prima facie* case of retaliation can be established by a showing, *inter alia*, "retaliatory harassment"—which the Court believes is synonymous with "retaliatory hostile work environment"—or, alternatively, an adverse employment action. *See Morris v. Oldham Cty. Fiscal Ct.*, 201 F.3d 784, 792 (6th Cir. 2000) ("[To establish a *prima facie* case of retaliation under Title VII a] plaintiff must now prove that: (1) she engaged in activity protected by Title VII; (2) this exercise of protected rights was known to defendant; (3) defendant thereafter took adverse employment action against the plaintiff, or the plaintiff was subjected to severe or pervasive retaliatory harassment by a supervisor; and (4) there was a causal connection between the protected activity and the adverse employment action or harassment.") (emphasis omitted). In other words, as the third element suggests, a hostile work environment (or harassment) can be a form of (or at least a valid substitute for) an adverse employment action.[12] Therefore, the Court will consider Plaintiff's retaliation claim to include one of "retaliatory hostile work environment" (or "retaliatory harassment"). The Court will discuss Count II in the section discussing the applicable limitations periods.

---

[12] Herein, the Court refers to a retaliation claim that is based on a more discrete adverse employment action, as opposed to one based on "harassment" or a hostile work environment, as a claim of "general retaliation."

c.  <u>Count III</u>

Invoking Title VI of the Civil Rights Act of 1964,[13] Count III asserts both a claim for a "hostile and discriminatory educational environment" based on Plaintiff's "national origin, race, and/or color," and a claim for "retaliat[ion] against Plaintiff for lodging complaints with" Defendant. (*Id.* at ¶ 63, 64). In briefing regarding his Title VI claims in Count III, Plaintiff relies primarily on incorporating his arguments regarding his Title VI claims in Count II. (Doc. No. 31 at 16). He thus both (i) indicates that his Title VI retaliation claim, like his Title VII retaliation claim, is based on both a retaliatory hostile work environment and general retaliation; and (ii) omits any discussion of requirements of Title VI (which concerns discrimination *in federally-funded programs,* including those administered by Defendant) and the requirements of Title VI (which concerns discrimination in *employment* by most kinds of employers, including Defendant).[14]

As noted above, Defendant does not address the alleged existence of a hostile work environment,[15] but Defendant does address whether the Title VI claims are timely. The Court will discuss the timeliness of such claims below.

_____

[13] As noted below, Title VI, as amended, provides that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d.

[14] By this, the Court means a claim of retaliation based on an adverse employment action that is more discrete than harassment or a (hostile) work environment.

[15] Defendant does mention this claim and seems to allude to it. (Doc. No. 27 at 10). However, Defendant does not cite any relevant case law or make any arguments regarding it.

d.  Count IV

Count IV asserts a claim under 42 U.S.C. § 1981. The heading for this claim cites solely "race discrimination," but then, in explaining his claim Plaintiff alleges that the discrimination was "due to his national origin, race and/or ethic [sic] characteristics." (*Id.* at ¶ 67). In so doing, Plaintiff goes astray; as discussed above, the characteristics of national origin and ethnicity are not cognizable bases for a claim under § 1981. Therefore, the Court will grant summary judgment to Defendant on this claim to the extent it is based on his national origin and ethnicity. To the extent that the § 1981 claim is based on Plaintiff's race, the Court will discuss this claim below.

B.      **Evidentiary issues**

In its Reply, Defendant argues that Plaintiff's evidence is insufficient to create a genuine dispute of material fact.[16] Defendant seems to be making (while also unfortunately conflating) two separate arguments: 1) that Plaintiff's own testimony is not enough (without other support) to create a genuine dispute of material fact on certain topics, and 2) that Plaintiff's testimony comprises of speculation and opinions that are not sufficient to show a genuine dispute of material fact. (Doc. No. 33).

Regarding the first argument, the undersigned has previously commented on a similar situation in an employment discrimination case at the summary judgment stage, explaining that:

> Some district courts have indicated that the presentation of only self-serving statements by a plaintiff is insufficient to survive summary judgment. *E.g.*, *Gooden v. Ryan's Rest. Grp., Inc.*, No. 5:04CV179R, 2007 WL 855326, at *7 n.5 (W.D. Ky. Mar. 14, 2007) (noting, but not basing its ruling on, case law in other circuits that a plaintiff in a Title VII case cannot solely rely on self-serving testimony, and stating "[u]nder summary judgment, the Court merely decides, as a matter of law, whether a jury could reasonably conclude that the evidence presented is credible"); *Young v. United Parcel Serv., Inc.*, 992 F. Supp. 2d 817, 830 (M.D. Tenn. 2014)

---

[16] As made clear above, the Court is cognizant that Plaintiff has no obligation to show a genuine dispute of material fact unless and until Defendant meets its burden to show preliminarily the absence of a genuine issue of material fact.

("As an initial matter, [Plaintiff's] self-serving testimony is the only evidence that Simmons made such a statement. Such self-serving and conclusory allegations are insufficient to overcome a motion for summary judgment."); *Morris v. Mary Rutan Hosp.*, No. 2:18-CV-543, 2020 WL 5943022, at *7 (S.D. Ohio Oct. 7, 2020) ("Plaintiff's self-serving testimony is the only evidence he offers to suggest that he was unfairly treated because of his age; he offers no statements from others that suggest that his age was a factor in the decision to impose additional requirements on him. Such self-serving and conclusory allegations are insufficient to overcome a motion for summary judgment.").

Despite this line of cases, the Sixth Circuit recently stated:

> That evidence, we note, consists wholly of self-serving statements. Sometimes, evidence of that nature might not be sufficient to survive summary judgment. For instance, where self-serving testimony is blatantly and demonstrably false, it understandably may not create a genuine issue of material fact, thereby allowing a court to grant summary judgment. *See, e.g.*, *Scott v. Harris*, 550 U.S. 372, 380, 127 S. Ct. 1769, 167 L.Ed.2d 686 (2007) (holding that a court, when determining whether there is a genuine dispute of material fact in a case, may ignore testimonial evidence when it is "blatantly contradicted" by video evidence); *see also CenTra, Inc. v. Estrin*, 538 F.3d 402, 419 (6th Cir. 2008) (citing *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1480 (6th Cir. 1989) (assuming as true on summary judgment the nonmoving party's version of events unless that version is "totally implausible")). But nothing in the record leads us to the conclusion that Davis's claim that Gallagher planted the drugs is demonstrably false or totally implausible. Although perhaps not as strong as some other evidence might be, self-serving statements can create a genuine dispute of material fact to be resolved at trial. That appears to be the case here.

*Davis v. Gallagher*, 951 F.3d 743, 750 (6th Cir. 2020); *see also Robinson v. Brege*, No. 1:20-CV- 449, 2021 WL 1092638, at *2 (W.D. Mich. Mar. 5, 2021), *report and recommendation adopted*, No. 1:20-CV-449, 2021 WL 1091551 (W.D. Mich. Mar. 22, 2021) (rejecting argument that plaintiff's evidence should not be considered and noting that "labeling a party's testimony self- serving, absent, for example, prior contradictory deposition testimony, is an argument without traction, as testimony by a party is inherently self-serving" (relying on *Davis*)); *Johnson v. United Parcel Serv., Inc.*, 117 F. App'x 444, 455 (6th Cir. 2004) (considering plaintiff's testimony, which was the only evidence, regarding the use of the "n-word").

Defendant has also not argued that Plaintiffs' testimony is not credible. This Court has previously found in a similar factual context that "[Defendant] maintains that [Plaintiff] has presented 'no evidence' other than 'self-serving testimony' to support his pretext argument. The court disagrees, particularly where the same

could be said of the defendants' evidence, which largely consists of self-serving testimony by the supervisors whom [Plaintiff] now accuses of misconduct. [The Court will view] the facts in the light most favorable to [Plaintiff] and resolving factual disputes in his favor[.]" *Foreman v. Five Star Food Serv., Inc.*, 950 F. Supp. 2d 958, 976 (M.D. Tenn. 2013), *order vacated in part on other grounds on reconsideration*, No. 3:11-CV- 01124, 2013 WL 5675899 (M.D. Tenn. Oct. 18, 2013) (vacating part of previous ruling upon presentation of new evidence by movant); *see also Pendleton*, 2016 WL 2927983, at *10 (rejecting Defendant's argument that plaintiff's unsubstantiated statement should not be considered on summary judgment) (discussing *Johnson*) . . .

That is to say, "[on motion for] summary judgment, the Court merely decides, as a matter of law, whether a jury could reasonably conclude that the evidence presented is credible." *Gooden*, 2007 WL 855326, at *7. In so doing, the Court keeps in mind that even unsupported and self-serving statements can be credible under certain circumstances, although "[t]he Court views self- serving testimony opposing a motion for summary judgment with scrutiny when it is unsupported by additional evidence." *Johnson v. Buddy's Bar-B-Q, Inc.*, No. 1:13-CV-254, 2015 WL 1954454, at *5 (E.D. Tenn. Apr. 29, 2015).

*Jordan v. Mathews Nissan, Inc.*, No. 3:18-CV-01233, 2021 WL 1967562, at *20 n.40 (M.D. Tenn. May 17, 2021) (Richardson, J.). Defendant here similarly has not attacked Plaintiff's credibility, and instead merely argues that the Court should not consider (alleged) facts that are supported only by Plaintiff's testimony. Based on the recent Sixth Circuit precedent discussed above, the Court finds that it should consider such testimony, though it may apply some additional scrutiny to the statements when they are entirely unsupported by other evidence in the record.[17]

---

[17] The Court is unpersuaded by Defendant's reliance on *Phillips v. Anderson Cty.*, No. E200901883COAR3CV, 2010 WL 4514886, at *7 (Tenn. Ct. App. Nov. 10, 2010). In that case, the court was clear that the plaintiff's trial testimony alone was not sufficient when it amounted to speculation (discussed below) and "was undercut by other circumstantial and direct evidence." *Id.* This case does not support Defendant's position that such evidence should not be relied on in the summary judgment context in assessing whether the (non-movant) plaintiff has shown a genuine dispute of material fact. The case instead indicates that testimony presented at trial could not support a particular outcome when it was speculation and was contradicted by other record evidence. More fundamentally, the Court declines to afford appreciable weight to a state case, given that the Court here is dealing with a federal procedural matter, *i.e.*, the admissibility and weight to be given certain testimony on a motion brought under Federal Rule of Civil Procedure 56.

Regarding the second argument, which Defendant conflates with the first argument, the Court agrees that in seeking to meet its burden, a plaintiff cannot rely purely on mere personal belief, conjecture, and speculation, because these are insufficient to support an inference of discrimination. *Wingo v. Michigan Bell Tel. Co.*, No. 16-CV-12209, 2019 WL 78898, at \*9 (E.D. Mich. Jan. 2, 2019), *aff'd*, 815 F. App'x 43 (6th Cir. 2020) ("Plaintiff testified that his knowledge of other employees' discipline was based on undocumented, non-specific conversations and/or his personal belief that individuals were not disciplined or less harshly disciplined in circumstances otherwise comparable to his own. This 'evidence' is insufficient to preclude summary judgment." (internal citation omitted)); *Curry v. SBC Commc'ns, Inc.*, 669 F. Supp. 2d 805, 827 (E.D. Mich. 2009) ("The record contains nothing more than [Plaintiff's] conclusion that white employees were treated differently than her, with no basis to assess the propriety of the alleged comparators. This evidence is insufficient."); *Hartsel v. Keys*, 87 F.3d 795, 801 (6th Cir. 1996) (stating that affidavits indicating that the plaintiff did a better job than another individual were "bald assertions and conclusory statements [that] fail to provide any factual support for [plaintiff's] claim of sexist, ageist, or politically retaliatory animus."); *Simns v. Maxim Healthcare Servs., Inc.*, No. 11-1052, 2013 WL 435293, at \*7 (W.D. Tenn. Feb. 4, 2013) ("The vague statements proffered by Plaintiff fall short of providing the Court with sufficient evidence to permit a finding that [the other employee] was similarly situated."). Therefore, the Court will not consider—let alone find sufficient for purposes of creating a genuine dispute of material fact—statements of Plaintiff that reflect mere personal belief or speculation.[18]

---

[18] Oddly, although protesting the presentation of such evidence, Defendant attempts to present similar evidence, such as evidence that particular professors believe that Plaintiff has been treated fairly. (*E.g.*, Doc. No. 31-9 at ¶¶ 17, 22). The Court likewise will not consider these statements.

In sum, on the instant Motion, the Court finds that it can consider, and ascribe appropriate weight to, unsupported statements made by Plaintiff, but it will not consider Plaintiff's statements that are speculative or mere statements of personal belief.

C.     **Timeliness of Title VII claims (Counts I and II)**[19]

Defendant argues that Plaintiff's Title VII claims, which are brought in Counts I and II, are time-barred. [20] (Doc. No. 27 at 6–7). Plaintiff asserts that all of the Title VII claims are timely, were "continuous," or are subject to equitable tolling. (Doc. No. 31 at 9).

Title VII requires an employee to file a charge with the EEOC within either 180 days or 300 days of an allegedly unlawful employment practice, depending on the law of the applicable

---

[19] The undersigned will highlight a few important points regarding the terminology used herein, by reference to something he wrote years ago:

> On the subject of limitations, courts often use language loosely, interchanging various terms for one another. For maximum clarity, terms must be defined so that important concepts are distinguishable from one another, then used consistently in accordance with those definitions. Herein, legal authorities will be paraphrased in terms of the following definitions to convey the concepts expressed therein, regardless of the terms used (or misused) by the authority being cited.

> As used herein, a "statute of limitations" refers to a legislative enactment, or codification thereof, that sets forth a limitations period. . . . A "limitations period" refers to the length of time-the specific number of days, months, or years-in which a given claim can be commenced, as set forth in a statute of limitations. "Limitations" [refers] to the legal doctrine whereby a plaintiff is barred from bringing a claim based upon the lapse of the applicable limitations period. To say that limitations "applies" is to say that, under limitations law, a claim is time-barred.

Eli J. Richardson, *Eliminating the Limitations of Limitations Law*, 29 Ariz. St. L.J. 1015, 1017–19 (1997).

[20] Defendant does not specify which of Plaintiff's Title VII claims (i.e., Count I or Count II) it believes is time barred. The heading of Defendant's argument states that Plaintiff's Title VII claims are "mostly" time barred, but the argument itself speaks in terms of all of Plaintiff's Title VII claims. (Doc. No. 27 at 6–7). The Court will assume that Defendant is arguing that both Claim I and Claim II (including Plaintiff's retaliation claim) are time-barred.

state and whether that state is a "deferral state."[21] 42 U.S.C. §2000e-5(e)(1); *Alexander v. Local 496, Laborers' Int'l Union of N. Am.*, 177 F.3d 394, 407 (6th Cir. 1999). "The United States Supreme Court has held that these time periods operate, essentially, as a form of [limitations period]." *Whitehead v. Grand Home Furnishings, Inc.*, No. 2:19-CV-00040-DCLC, 2020 WL 1237423, at *4 (E.D. Tenn. Mar. 13, 2020) (citing *Nat'l R.R. Pass. Corp. v. Morgan*, 536 U.S. 101, 122 (2002)). Tennessee is a deferral state, and so the 300-day limitations period, instead of the 180-day limitations period, applies if a plaintiff who has filed with the EEOC filed first or contemporaneously with the Tennessee Human Rights Commission ("THRC"). *Equal Employment Opportunity Comm'n v. Dolgencorp, LLC*, 196 F. Supp. 3d 783, 799 (E.D. Tenn. 2016), *aff'd*, 899 F.3d 428 (6th Cir. 2018).

Here, Plaintiff filed a Charge of Discrimination with the EEOC which was received by the EEOC on November 5, 2018. (Doc. No. 31-9 at ¶ 33; Doc. No. 29-2 at 2). The record shows at Doc. No. 29-2 at 2 that Plaintiff filed contemporaneously with the THRC. Thus, in order for the complaint with the EEOC to have been timely filed, the allegedly unlawful employment practice at issue must have occurred no more than 300 days prior to Plaintiff's EEOC filing—meaning, here, on or after January 9, 2018.[22]

As discussed above, Title VII allows for two different types of claims: (1) those alleging discrete discriminatory or retaliatory acts (comprised of "discrete acts" such as "termination,

---

[21] A "deferral state" is a state that has enacted its own laws prohibiting discrimination in employment. *Alexander v. Local 496, Laborers' Int'l Union of N. Am.*, 177 F.3d 394, 406 (6th Cir. 1999).

[22] While Plaintiff's Charge of Discrimination was received by the EEOC on November 5, 2018, Plaintiff dated the Charge of Discrimination October 4, 2018. (Doc. No. 29-2 at 2). This roughly one-month difference has no impact on the Court's analysis of this issue, as Plaintiff's filing would not meet the 300-day deadline even if considered "filed" on October 4.

failure to promote, denial of transfer, or refusal to hire"); and (2) those alleging a hostile work environment (which are "composed of a series of separate acts that collectively constitute one 'unlawful employment practice'"). *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114–115 (2002). For the former type of claim, "[e]ach discrete discriminatory act starts a new clock for filing charges alleging that act" and "[t]he charge, therefore, must be filed within the 180– or 300– day time period after the discrete discriminatory act occurred." *Id*. at 113. For the latter, however, the plaintiff must file his EEOC charge within 180 or 300 days of "an act contributing to the [hostile work environment] claim"; provided that the plaintiff does so, "the entire time period of the hostile environment may be considered by a court for the purposes of determining liability." *Id*. at 117. Therefore, while Plaintiff here has alleged that he suffered from numerous discriminatory and retaliatory acts during the time that he was employed by Defendant, only incidents that took place within the timely filing period (i.e., on or after January 9, 2018) are actionable. "All prior discrete discriminatory acts are untimely filed and no longer actionable." *Id*. at 103.

Here, Defendant does not appear to argue that Plaintiff's Title VII hostile work environment claim is time-barred, and the Court will not grant summary judgment to Defendant on this claim on the basis of untimeliness (and likewise will forgo any analysis on this point). Instead, Defendant's argument regarding the timeliness of Plaintiff's Title VII claims focuses on whether any alleged discrete adverse employment events took place prior to January 9, 2018. Rather than specifying the date(s) or periods of time during which these events occurred, however, Defendant (unhelpfully) argues that "any alleged claims of discrimination actions occurring prior to January 9, 2018" are time-barred. (Doc. No. 27 at 7). While this statement is true, it is unhelpful in that it does not indicate *which* events Defendant contends occurred prior to January 9, 2018.

Plaintiff's filing with the EEOC also does not indicate particular dates on which the alleged incidents of discrimination or retaliation occurred. (Doc. No. 29-2 at 2). Plaintiff's Response is equally unhelpful; in the Response, Plaintiff simply states that all of his claims are "timely" (without identifying any relevant dates) and that "the discrimination and retaliation was and is continuous." (Doc. No. 31 at 9).[23]

Plaintiff alleges a host of allegedly unlawful employment practices, with the first occurring in April 2017 when Plaintiff's application for Department Chair was denied. (Doc. No. 31 at 5). The next event occurred in October 2017, when the dean requested that faculty members participate in the OEP screening program. (Doc. No. 31-9 at 11). These two events clearly occurred before January 9, 2018, and therefore claims based on them are outside the limitations period. The other events mentioned in the EEOC charge (Plaintiff being questioned about his signature, having his paycheck withheld, being given non-preferred class schedules, and receiving an 8-hour schedule instead of a 7.5-hour schedule) are not as easily attributable to a clear date certain. (Doc. No. 29-2 at 2).

The Court thus undertakes its own analysis of the record to determine which of the aforementioned events occurred prior to January 9, 2018 and therefore are no longer actionable.[24]

---

[23] As discussed below in relation to Plaintiff's Title VI claims, the Court does not find that Plaintiff has adequately invoked the so-called "continuing violations doctrine."

[24] The Court constrains its review of the record to only Plaintiff's Response to Defendant's Statement of Facts (Doc. No. 31-9) and Defendant's Response to Plaintiff's Statement of Facts (Doc. No. 32) because, as discussed in a footnote above, it is not the Court's job to sift through the entire record to find evidence to bolster Defendant's Motion. (*See* footnote 49, above).

1.    *Defendant questioning Plaintiff's signature*

The record is clear that the issue related to the signature on Plaintiff's timesheets arose in 2017, but (as discussed above) the record is unclear regarding when the issue stopped. Plaintiff indicated in response to Defendant's Statement of Facts that instances of being questioned about his signature extended "beyond 2017" but that he could not remember when the issues stopped. (Doc. No. 31-9 at ¶ 7). Plaintiff claims that the "record" shows that this issue persisted beyond 2017 (*id.*), but cites only his own affidavit (Doc. No. 31-4 at ¶ 3) as evidence of such. (*Id.*). Plaintiff also asserts in his Statement of Facts that "issues with regard to [his] timesheets lasted beyond 2017." (Doc. No. 32 at ¶ 2). In response, Defendant admits only that "Plaintiff so states," *i.e.*, that Plaintiff claims in his affidavit these things to be true. (*Id.*). But again, as discussed above, by failing to dispute the truth of what Plaintiff states, Defendant is deemed to have admitted the truth of what Plaintiff states and not merely that Plaintiff states what he states.

But that gets Plaintiff only so far. The record contains no evidence beyond Plaintiff's own vague contention that the issue extended "beyond 2017." The time period January 1–8, 2018 is "beyond 2017," and so the Court will not find that Plaintiff has shown that a jury could find that this issue continued to occur after January 9, 2018.[25] It was incumbent here for Plaintiff to point to evidence sufficient to make this showing. And if all Plaintiff has is his own amorphous statement that the incident occurred "beyond 2017," it is sheer speculation that it occurred beyond January 8, 2018; Plaintiff simply needed to introduce more specific evidence to demonstrate what he needed to show here. Thus, a claim based on the discrete discriminatory act of Plaintiff being

---

[25] It is noteworthy, though certainly not dispositive, that in the Complaint, all alleged specific instances of Plaintiff's timesheet signature being challenged are from the year 2017. (Doc. No. 1).

questioned about the signature on his timesheets is outside the limitations period and thus presumptively time-barred.

### 2. *Defendant withholding Plaintiff's paychecks*

Plaintiff's response to Defendant's statement that "Dr. Jara does not recall any incidents after 2017 as to . . . getting paid promptly" suggests that Plaintiff does not recall whether the issue regarding his paychecks being withheld persisted after 2017. (Doc. No. 31-9 at ¶ 7). Plaintiff responds: "Denied. Jara testified that he 'didn't recall' and the record shows issues with his timesheets beyond 2017. See Jara Affidavit at ¶3." (*Id.*). Plaintiff's response, in reality, is not really a denial of Defendant's statement. Instead, Plaintiff's response indicates that he does not know whether any of his paychecks were withheld subsequent to 2017. Because the record shows only that Dr. Jara does not recall whether his paychecks were withheld after 2017, the Court cannot accept as true that Dr. Jara has pointed to evidence sufficient for a jury to find that paycheck withholding continued to occur after January 9, 2018 (which, as a reminder, is the relevant date for measuring whether claims related to these events are time-barred). Thus, a claim based on the discrete discriminatory act of withholding Plaintiff's paychecks is outside the limitations period and thus presumptively time-barred.

### 3. *Plaintiff receiving non-preferred class schedules*

Plaintiff states in the EEOC charge that "[he] was given class schedules that were the very opposite of [his] submitted preferences," (Doc. No. 29-2 at 2), but does not indicate when he received these non-preferred class schedules (nor does Plaintiff indicate what exactly these preferences were). Plaintiff's Response to Defendant's Statement of Facts does make reference to Plaintiff's desire to teach upper-level classes and other issues related to class preferences, but does not mention any dates or time periods during which Plaintiff received a class schedule that did not

align with his preferences. (*See, e.g.*, Doc. No. 31-9 at ¶¶ 11, 16, 19, 27, 29). Defendant's Response to Plaintiff's Statement of Facts does not mention preferred class schedules at all. (Doc. No. 32). The Court is left with little or no information in the record (or references in the parties' briefing) regarding the timing of Plaintiff receiving non-preferred class schedules. Ultimately, the Court need not even address the timeliness of this claim because Plaintiff does not make any allegations in the Complaint whatsoever regarding being given class schedules that did not match his submitted preferences. Thus, Plaintiff receiving non-preferred class schedules (and any arguments contained in the parties' briefing referencing such claims) will be disregarded when considering the extent to which Plaintiff has Title VII claims that survive the Motion.[26]

4.    *Plaintiff receiving an 8-hour schedule instead of a 7.5-hour schedule*

This particular event (Plaintiff being given an 8-hour schedule while "others" received a 7.5-hour schedule) is not mentioned Plaintiff's Response to Defendant's Statement of Facts or Defendant's Response to Plaintiff's Statement of Facts. While there are references made to foreign-born professors being assigned more course hours than non-foreign born professors, the Court cannot construe this event alleged in the EEOC charge to invoke a difference in assigned hours between foreign-born professors and non-foreign born professors. Ultimately, the Court need not even address the timeliness of this claim because Plaintiff does not make any allegations in the Complaint whatsoever regarding being given an 8-hour schedule while unspecified "others" were given a 7.5-hour schedule. Thus, Plaintiff receiving an 8-hour class schedule (and any

_____

[26] The Court cannot "dismiss" these claims, as they were never alleged in the Complaint to begin with.

arguments contained in the parties' briefing referencing such claims) will be disregarded when considering the extent to which Plaintiff has Title VII claims that survive the Motion.[27]

D.   **Equitable tolling of Title VII claims (Counts I and II)**[28]

"It is well established that 'filing a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but [rather] a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling.'" *Truitt v. Cty. of Wayne*, 148 F.3d 644, 646 (6th Cir. 1998) (quoting *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982)). *See also Fort Bend Cty., Texas v. Davis*, 139 S. Ct. 1843 (2019) (holding that Title VII's charge-filing precondition to suit requiring that charge be filed with the EEOC within specified period was not a "jurisdictional" requirement, but rather a claim-processing rule that was subject to forfeiture by a party who waits too long to invoke the rule). The equitable tolling doctrine is read into every federal statute. *E.E.O.C. v. Kentucky St. Police Dep't*, 80 F.3d 1086, 1095 (6th Cir. 1996). It is the plaintiff's burden to demonstrate why he or she is entitled to equitable tolling. *Allen v. Yukins*, 366 F.3d 396, 401 (6th Cir. 2004). "Equitable tolling 'should be granted only sparingly' and typically when an opposing party has 'engaged in . . . misrepresentations or other wrongdoing . . . .'" *Brittmon v. Upreach, LLC*, 285 F. Supp. 3d 1033, 1046 (S.D. Ohio 2018) (quoting *Amini v. Oberlin College*, 259 F.3d 493, 500 (6th Cir. 2001) (citations omitted)).

The Sixth Circuit has identified five factors a court should consider when determining whether equitable tolling should be applied:

---

[27] Again, the Court cannot "dismiss" these claims, as they were never alleged in the Complaint to begin with.

[28] Although the Court discusses the continuing violations doctrine in connection with the Title VI claim below, the Court does not discuss it here because it finds that equitable tolling applies. As will be discussed, equitable tolling does not appear relevant to the Title VI claim, as the Title VI claim did not need to be exhausted.

1) lack of notice of the filing requirement; 2) lack of constructive knowledge of the filing requirement; 3) diligence in pursuing one's rights; 4) absence of prejudice to the defendant; and 5) the plaintiff's reasonableness [in] remaining ignorant of the particular legal requirement. *See Andrews v. Orr*, 851 F.2d 146, 151 (6th Cir. 1988). The propriety of equitable tolling must necessarily be determined on a case-by-case basis. *See Jarrett*, 22 F.3d at 260 (citation omitted).

*Truitt*, 148 F.3d at 648.[29] "[T]he five factors considered in deciding whether to equitably toll a limitations period are not comprehensive, nor is each of the five factors relevant in all cases." *Amini v. Oberlin Coll.*, 259 F.3d 493, 500 (6th Cir. 2001). As the undersigned specifically noted years ago, the correct outcome of this kind of ambiguous and discretionary test for equitable tolling tends not to be cut-and-dried on the front end. Eli J. Richardson, *Eliminating the Limitations of Limitations Law*, 29 Ariz. St. L.J. 1015, 1017–19 (1997). Presented with the task of applying this test, the Court cannot claim the ability to pronounce an outcome that is indisputably correct; instead, it must simply call it like it sees it.

---

[29] The undersigned here will reiterate what he has said previously about multi-factor tests generally:

> "The undersigned has noted on multiple occasions that multi-factor (or balancing) tests, though often having considerable desirability and merit, tend to foster outcomes that are unpredictable on the front end, given such tests' subjectivity." *Memphis A. Phillip Randolph Inst. v. Hargett*, No. 3:20-CV-00374, 2020 WL 5095459, at *16 (M.D. Tenn. Aug. 28, 2020) (quoting Eli J. Richardson, *Eliminating the Limitations of Limitations Law*, 29 Ariz. St. L.J. 1015, 1050 (1997) (proposing a multi-factor test to resolve civil limitations issues, while conceding that when courts "apply[ ] a multi-factor test, [it is] always an unpredictable endeavor") and Eli J. Richardson, *Taking Issue with Issue Preclusion: Reinventing Collateral Estoppel*, 65 Miss. L.J. 41, 95 (1995) (proposing multi-factor test to resolve collateral estoppel issues, while conceding that its drawback is that it "would produce unpredictable resolutions of collateral estoppel issues, in that it is so flexible and calls for very subjective judicial determinations")). This reality tends not to bode well for the prospects of a multi-factor test to resolve a question as a matter of law at the summary judgment stage.

*Acosta v. Peregrino*, No. 3:17-CV-01381, 2020 WL 5995049, at *6 (M.D. Tenn. Oct. 9, 2020) (Richardson, J.).

Plaintiff argues that if any of his Title VII claims are found to be untimely, equitable tolling should apply. (Doc. No. 31 at 9).[30] Plaintiff states in his deposition that Defendant made it clear that an employee having a complaint of discrimination should go to Defendant's EEO Office and that this is "the same as going to the EEOC outside the University." (Doc. No. 31 at 10 (citing Doc. No. 29-1 at 80–81)). Defendant does not respond to this allegation in its Motion or Reply; the Court will thus accept this fact as true for purposes of ruling on this Motion. Plaintiff submitted complaints to the EEO Office at TSU on February 15, 2017, March 1, 2017, and April 18, 2017. (Doc. No. 31 at 10). Plaintiff thereafter filed his EEOC charge on November 5, 2018 alleging failure to promote, issues with the signature on his timesheets, the English proficiency screening program, scheduling and hours, and being "talked down to and belittled." (Doc. No. 31-9 at ¶ 33; Doc. No. 29-2 at 2). Because of this, Plaintiff argues that he lacked any notice of a filing requirement, that he was "extremely diligent in pursuing his rights," that Defendant was aware of his complaints, and that he could reasonably rely on Defendant's representation that his filing with the EEO office was the same as filing with the EEOC. (Doc. No. 31 at 10). Based on the factual record, these arguments are convincing. It is undisputed that Plaintiff filed these multiple complaints with Defendant's EEO Office, and additionally lodged complaints with "superiors, administers and HR" of the university in 2017 and 2018. (Doc. No. 32 at 2). And while neither party's Statement of Facts mentions either party's position as to whether Defendant affirmatively

---

[30] The Court construes Plaintiff's Response to invoke the doctrine of equitable tolling in relation to his Title VII claims only. While Plaintiff writes, "Plaintiff contends that *all* of his claims are timely and that the discrimination and retaliation was and is continuous. However, should this Court question the timeliness of any specific claims, they are subject to equitable tolling." (Doc. No. 31 at 9 (emphasis added)), Plaintiff makes this argument under the heading "Plaintiff's VII [sic] Claims are Timely and/or Subject to Equitable Tolling." In elaborating on the applicability of equitable tolling, Plaintiff focuses only on his Title VII causes of action, and not any other claims. Thus, the Court reads Plaintiff's statement to mean that Plaintiff contends all of his *Title VII* claims are timely, or otherwise subject to the doctrine of equitable tolling.

misled Plaintiff regarding the EEOC filing requirement, Defendant's silence in response to Plaintiff's contention that "[h]e was informed by the University that filing a complaint within the state university was the equivalent of filing a complaint with the EEOC" is telling. (Doc. No. 31 at 10).

These circumstances indicate that factors one, two, three, and five weigh in Plaintiff's favor in this case, as Plaintiff did not know of the requirement to file with the EEOC (as opposed to Defendant's EEO Office) and was diligent in pursuing his rights through the EEO Office. Defendant makes no argument in its Reply regarding whether equitable tolling applies to this case, and Defendant makes no argument that the factors should not weigh in favor of equitable tolling in this case. In particular, Defendant makes no argument regarding factor four, absence of prejudice to the defendant. While Plaintiff likewise provides no argument regarding this factor, the Court independently finds nothing in the record that suggests any particular prejudice to Defendant.

With all five of the factors enumerated in *Truitt v. County of Wayne* weighing in Plaintiff's favor here, the Court finds that the principles of equitable tolling should apply to Plaintiff's Title VII claims for discrimination and hostile work environment due to national origin (Count I). In particular, because the Court accepts as true for purposes of resolving this Motion that Defendant actively misled Plaintiff regarding the sufficiency of filing a claim with Defendant's EEO Office, the Court tolls the time elapsed between Plaintiff filing his complaints with the EEO Office and making his filing with the EEOC. Thus, the delay in time between the alleged adverse employment actions and Plaintiff's filing with the EEOC on November 5, 2018 is excused, and the Court will treat Plaintiff's EEOC filing as falling within the 300-day window required by 42 U.S.C. §2000e-5(e)(1). Thus, Plaintiff's Title VII claims based on the four discrete acts identified in Section C.

above as being outside the limitations period (*i.e.*, Plaintiff being denied the Department Chair position, the OEP Screening, the questioning of Plaintiff's signature on his timesheets, and the withholding of Plaintiff's paychecks) are not subject to summary judgment based on limitations.

E.   **Timeliness of Title VI claims**

As discussed above, Plaintiff's Title VI claims appear to be based both on general retaliation (including, but not limited to, alleged discrimination in the form of the above-referenced failure to promote) and on the above-referenced alleged retaliatory hostile work environment.[31] Defendant argues that Plaintiff's Title VI claims are time-barred. Defendant states:

> Plaintiff's lawsuit was filed in 2020 complaining of a failure to promote that occurred in 2017. (Docket No. 1, page 6, para. 65.) Plaintiff's Title VI claim should be dismissed. In the alternative, Defendant would submit that Plaintiff's Title VI claim should be limited strictly to allegations within one year prior to the filing date of Plaintiff's lawsuit, which was February 13, 2020. (Docket No. 1.)

(Doc. No. 27 at 12). Defendant thus argues only that the failure-to-promote aspect of Plaintiff's general retaliation claim is untimely, and does not at all address the timeliness of Plaintiff's retaliatory hostile work environment claim (or any other allegations which fall under the category of "general retaliation").[32] In response, Plaintiff does not address whether his Title VI claims are *timely*, and instead he addresses only Defendant's arguments regarding the *merits* of his Title VI claims. (Doc. No. 31 at 16). The Court thus views Defendant's limitations-based argument for

---

[31] Plaintiff does not specifically indicate in the Complaint which events he contends support his Title VI claims (aside from being denied the promotion to Department Chair, which occurred in 2017).

[32] True, Defendant also states that alternatively, "Plaintiff's Title VI claim should be limited strictly to allegations within one year prior to the filing date of Plaintiff's lawsuit, which was February 13, 2020." (Doc. No. 27 at 12). But again, as previously discussed, the Court will not undertake a review of the record to find evidence and form arguments on Defendant's behalf. Defendant here has not articulated which events underlying Plaintiff's Title VI claims it contends are barred by the relevant statute of limitations, other than Plaintiff being denied the Department Chair promotion. The Court therefore will not analyze whether to grant summary judgment on timeliness grounds as to any other aspect of Plaintiff's Title VI claims.

summary judgment on Plaintiff's Title VI claims to apply only to the discrete act of Defendant failing to promote Plaintiff to the Department Chair position.

The applicable limitations period for Title VI is the state's (Tennessee's) personal injury limitations period, which is one year. *Lillard v. Shelby Cty. Bd. of Educ.*, 76 F.3d 716, 729 (6th Cir. 1996); *Simmons v. Middle Tennessee State Univ.*, 117 F.3d 1421 (6th Cir. 1997). Plaintiff filed this case on February 13, 2020. (Doc. No. 1). Plaintiff's application for Department Chair was denied in April 2017. (Doc. No. 31 at 5).

Thus, Plaintiff brought his Title VI claim alleging retaliation in the form of a failure to promote after the expiration of the limitations period. As indicated above, Plaintiff states (conclusorily and very generally) that his claims were timely filed but makes no specific argument in support of such assertion; he likewise does not argue that the doctrine of equitable tolling applies to his Title VI claims.[33]

---

[33] In his Response, Plaintiff makes a brief reference indicating that all of his claims should survive because they involve "continuous" conduct. (Doc. No. 31 at 9). Plaintiff does not elaborate on this reference or explain why this saves his claim. The Sixth Circuit recognizes the "continuing violation doctrine" (which Plaintiff does not specifically reference) when determining whether a claim for discrimination is timely filed:

> The "continuing violation" doctrine provides that when "there is an ongoing, continuous series of discriminatory acts, they may be challenged in their entirety as long as one of those discriminatory acts falls within the limitations period." *Haithcock v. Frank*, 958 F.2d 671, 677 (6th Cir. 1992). In other words, when a continuing violation is shown, "a plaintiff is entitled to have a court consider all relevant actions allegedly taken pursuant to the employer's discriminatory policy or practice, including those that would otherwise be time barred." *Alexander v. Local 496, Laborers' Int'l Union of N. Am.*, 177 F.3d 394, 408 (6th Cir.1999); *see also Held v. Gulf Oil Co.*, 684 F.2d 427, 430 (6th Cir. 1982). This Court has held that continuing violations may be shown in one of two ways. The first is "where there is some evidence of present discriminatory activity giving rise to a claim of a continuing violation," and "at least one of the forbidden discriminatory acts [has] occurred within the relevant limitations period." <u>Haithcock</u>, 958 F.2d at 678 (citation omitted) (emphasis in original). The second type of continuing violation exists when a plaintiff has

demonstrated a longstanding and over-arching policy of discrimination. *See id.*
This requires a showing by a preponderance of the evidence "that some form of
intentional discrimination against the class of which plaintiff was a member was
the company's 'standing operating procedure.'" *EEOC v. Penton Indus. Publ'g
Co.*, 851 F.2d 835, 838 (6th Cir.1988) (citation omitted).

*Kovacevich v. Kent State Univ.*, 224 F.3d 806, 829 (6th Cir. 2000); *Seay v. Fortune Plastics, Inc.*,
No. 3:09-CV-0605, 2012 WL 610006, at *3 (M.D. Tenn. Feb. 24, 2012). But the Sixth Circuit has
held, in the aftermath of *National Railroad Passenger Corp. v. Morgan,* 536 U.S. 101 (2002)
(reversing the Ninth Circuit's application of the continuing violations doctrine to "serial violations"
and holding the doctrine inapplicable to claims arising out of discrete acts of discrimination), that
the first of these two ways may be used *only* with respect to claims of hostile work environment
(of which, in this case, there are none, as explained more fully in a footnote herein). *See Maxwell
v. Postmaster Gen. of U.S.*, 986 F. Supp. 2d 881, 884 (E.D. Mich. 2013) (noting that "subsequent
to *Morgan,* the Sixth Circuit has also considered the continuing violations doctrine and found,
outside the context of hostile work environment cases, that it only applies where the challenged
acts are part of a 'longstanding and demonstrable policy of discrimination[ ]'" and that "*Morgan*
overturned prior Sixth Circuit case law allowing application of continuing violations doctrine to
serial violations" (citing *Sharpe v. Cureton,* 319 F.3d 259, 268 (6th Cir.2003))).

The Sixth Circuit has stated, "In the context of a hostile work environment claim, to
establish a continuing violation, a plaintiff must first produce evidence of a current violation taking
place within the limitations period. Second, a plaintiff must show that the current violation is
indicative of a pattern of similar discriminatory acts continuing from the period prior to the
limitations period." *El-Zabet v. Nissan N. Am., Inc.*, 211 F. App'x 460, 464 (6th Cir. 2006) (quoting
*Weigel v. Baptist Hosp. of East Tenn.*, 302 F.3d 367, 376 (6th Cir. 2002) (cleaned up)). This
doctrine appears to be applicable in the Title VI context. *Sewell v. Monroe City Sch. Bd.*, 974 F.3d
577, 584 (5th Cir. 2020).

Plaintiff has not asserted either of the two requirements for the doctrine's applicability in
the context of a claim of hostile work environment. Nor he has he asserted a longstanding and
demonstrable policy of discrimination, as has been required in the post-*Morgan* era for the
doctrine's applicability in other contexts, *i.e.*, claims of discrete acts of discrimination. Thus, the
Court finds that Plaintiff has not adequately invoked the continuing violations doctrine. *See e.g.*,
*McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory
manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not
sufficient for a party to mention a possible argument in the most skeletal way, leaving the court
to . . . put flesh on its bones." (quotation omitted)); *Clemente v. Vaslo*, 679 F.3d 482, 497 (6th Cir.
2012) ("[E]ven if had they raised their argument at the appropriate time, we would find it waived
on grounds that it is 'adverted to . . in a perfunctory manner, unaccompanied by some effort at
developed argumentation.'") (quoting *Langley v. DaimlerChrysler Corp.*, 502 F.3d 475, 483 (6th
Cir. 2007)); *Bowman v. Comm'r of Soc. Sec.*, No. 1:11-CV-865, 2012 WL 4343755, at *4 (W.D.
Mich. Sept. 21, 2012) ("Issues raised in a perfunctory manner are deemed waived.").

Thus, although Plaintiff could contend that the Complaint includes allegations of events
which took place within one year of the filing of the Complaint, (see Doc. No. 1 at ¶¶ 42, 44, 46,
47, and 48), the inclusion of these events in the Complaint still would fail to render Plaintiff's Title

Therefore, the Court will grant summary judgment to Defendant on Plaintiff's Title VI claim for general retaliation in the form of a failure to promote because the claim is time-barred, as it falls outside of the relevant limitations period. In other words, Plaintiff's Title VI claims will survive Defendant's Motion, with the exception of Plaintiff's Title VI failure-to-promote general retaliation claim.

F.     **Administrative exhaustion (Count II: Title VII retaliation)**

Defendant argues that the Court should find that Plaintiff is barred from pursuing his Title VII retaliation claim because it was not included in his original Charge of Discrimination filed with the EEOC (which alleged only discrimination based on national origin). (Doc. No. 27 at 9).

To explain why this retaliation claim should survive the present Motion, Plaintiff does nothing beyond citing *Azbell*. But *Azbell* is irrelevant to the discussion at hand, as it addressed what activities are protected under Title VII, not the circumstances under which a plaintiff could be excused from meeting requirements related to exhausting administrative remedies. *See* 2019 WL 4887199, at *3.

The Sixth Circuit has explained Title VII's exhaustion requirement as follows:

> As a general rule, a Title VII plaintiff cannot bring claims in a lawsuit that were not included in his EEOC charge. See 42 U.S.C. § 2000e–5(f)(1); *Alexander v. Gardner–Denver Co.*, 415 U.S. 36, 47, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974). This rule serves the dual purpose of giving the employer information concerning the conduct about which the employee complains, as well as affording the EEOC and the employer an opportunity to settle the dispute through conference, conciliation, and persuasion. *See id*. at 44, 94 S.Ct. 1011. Hence, allowing a Title VII action to encompass claims outside the reach of the EEOC charges would deprive the charged party of notice and would frustrate the EEOC's investigatory and conciliatory role. At the same time, because aggrieved employees—and not attorneys—usually file charges with the EEOC, their pro se complaints are construed liberally, so that courts may also consider claims that are reasonably

VI claims timely because Plaintiff has not shown that the continuing violations doctrine should apply.

related to or grow out of the factual allegations in the EEOC charge. *See Randolph v. Ohio Dep't of Youth Servs.*, 453 F.3d 724, 732 (6th Cir. 2006). As a result, "whe[n] facts related with respect to the charged claim would prompt the EEOC to investigate a different, uncharged claim, the plaintiff is not precluded from bringing suit on that claim." *Davis v. Sodexho*, 157 F.3d 460, 463 (6th Cir.1998).

*Younis v. Pinnacle Airlines, Inc.*, 610 F.3d 359, 361–62 (6th Cir. 2010). Here, Plaintiff failed to claim retaliation in his EEOC filing. Plaintiff makes no argument that his retaliation claim is "reasonably related to" or "grow[s] out of the factual allegations in the EEOC charge." *Id*. Even if the Court undertakes this line of argument itself, it still finds (even viewing Plaintiff's EEOC filing "liberally") that Plaintiff's failure to meet the administrative exhaustion requirement requires granting summary judgment on Plaintiff's retaliation claims. Plaintiff failed to check the box on the EEOC form evincing an intent to charge retaliation (which is a relevant, though not dispositive consideration, *see e.g. Schaneville v. Publix Super Markets, Inc.*, No. 3:20-CV-01038, 2021 WL 5054106, at *5 (M.D. Tenn. Nov. 1, 2021); *Deister v. Auto Club Ins. Ass'n*, 647 F. App'x 652, 658 (6th Cir. 2016)), and there is nothing in the narrative portion of the EEOC form which could be construed as a claim of retaliation. No language on the EEOC form would put the EEOC or Defendant on notice that Plaintiff was alleging retaliation. *See id.* at 363 (finding that the plaintiff failed to exhaust his administrative remedies on a Title VII retaliation claim where plaintiff failed to check off the retaliation box on the EEOC form, the form's narrative summary included "nothing . . . that could be interpreted as claiming retaliation," and the EEOC charge would not have put the EEOC or the employer on notice of a retaliation claim).

Therefore, the Court will grant summary judgment to Defendant on Plaintiff's retaliation claim under Title VII (Count II) as he has failed to exhaust his administrative remedies as to that claim. *See e.g.*, *Jones v. City of Franklin*, 309 F. App'x 938, 944 (6th Cir. 2009).

G.      **Title VII (Count I: national origin discrimination)**[34]

Defendant asserts that Plaintiff cannot establish a *prima facie* case of national origin discrimination under Title VII because 1) there was no adverse employment action, and 2) Defendant did not treat Plaintiff differently than similarly-situated employees. (Doc. No. 27 at 8).[35]

Title VII of the Civil Rights Act makes it illegal for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).[36]

---

[34] Because summary judgment will be granted to Defendant on Count II for Plaintiff's failure to exhaust his administrative remedies, this section will discuss only Plaintiff's Title VII claims contained in Count I in particular.

[35] As is noted elsewhere in this opinion, courts apply the same framework in analyzing Title VII, Title VI, and § 1981 claims. It is unclear why Defendant (and, in turn, Plaintiff) set forth a separate argument as to each of the three kinds of claims or why each such argument was slightly different than the others.

[36] Plaintiff and Defendant both quibble at various times regarding who all knew the ethnicity of Plaintiff and the other professors at various times. Here, the decisionmaker is the only person whose knowledge of Plaintiff's (and other professors') ethnicity is relevant to the Title VII analysis, and neither party has cited the Court to any relevant case law regarding the relevance of the knowledge (or lack thereof) of the particular person over whose knowledge the parties quibble. The Court is unpersuaded by these references to the record because neither party indicates that the decisionmaker (who is unknown) did not know about Plaintiff's protected status. *See Williams v. Wells Fargo Fin. Acceptance*, 564 F. Supp. 2d 441, 447 (E.D. Pa. 2008) ("[T]here can be no claim of disparate treatment where the employer made the adverse employment decision without awareness of the personal attribute that is the claimed discriminatory bias[.]"); *Stephens v. Nike, Inc.*, 611 F. App'x 896, 897 (9th Cir. 2015) ("The district court properly granted summary judgment on [Plaintiff's] federal race discrimination claims because [Plaintiff] failed to raise a genuine dispute of material fact as to whether the relevant decision maker was aware of his race or whether defendant continued to seek applications from other similarly qualified individuals outside the protected class.").

To survive a defendant's motion for summary judgment on a Title VII claim for disparate treatment,[37] a plaintiff may seek to raise a genuine issue of material fact by offering either direct evidence of discrimination or indirect (*i.e.*, circumstantial) evidence of discrimination in accordance with the familiar so-called *McDonnell Douglas* burden-shifting framework.

          1.   *Indirect evidence (McDonnell Douglas)*

The Sixth Circuit has summarized the applicability and workings of the *McDonnell Douglas* burden shifting framework as follows:

> A plaintiff may show discrimination by direct evidence, or a plaintiff lacking direct evidence of discrimination may succeed on a Title VII claim by presenting indirect evidence under the framework first set forth in *McDonnell Douglas Corp v. Green*, 411 U.S. 792, 802–03, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).
>
> To succeed under the *McDonnell Douglas* framework, the plaintiff must first make out a *prima facie* case of discrimination by a preponderance of the evidence. . . . Once the plaintiff makes out a *prima facie* case, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for" the adverse employment action. Should the defendant do so, the plaintiff then must prove by a preponderance of the evidence that the stated reasons were a pretext for discrimination.

*Redlin v. Grosse Pointe Pub. Sch. Sys.*, 921 F.3d 599, 606–07 (6th Cir. 2019) (citations omitted).

---

[37] "Disparate treatment" is an umbrella term used to refer to discrimination against an employee based on the employee's membership in a protected class. The Supreme Court has explained the term as such:

> Several of our decisions have dealt with the evidentiary standards that apply when an individual alleges that an employer has treated that particular person less favorably than others because of the plaintiff's race, color, religion, sex, or national origin. In such "disparate treatment" cases, which involve "the most easily understood type of discrimination," *Teamsters v. United States*, 431 U.S. 324, 335, n. 15, 97 S. Ct. 1843, 1854, n. 15, 52 L.Ed.2d 396 (1977), the plaintiff is required to prove that the defendant had a discriminatory intent or motive.

*Watson v. Fort Worth Bank & Tr.*, 487 U.S. 977, 985–86 (1988) (distinguishing disparate treatment from disparate impact cases).

Therefore, if only indirect (and no direct) evidence is present, the plaintiff bears the burden under *McDonnell Douglas* of first showing its *prima facie* case of discrimination, *i.e.*, that:

> 1) he is a member of a protected class; 2) he was qualified for his job and performed it satisfactorily; 3) despite his qualifications and performance, he suffered an adverse employment action; and 4) that he was replaced by a person outside the protected class or was treated less favorably than a similarly situated individual outside his protected class.

*Hughes v. Gen. Motors Corp.*, 212 F. App'x 497, 502 (6th Cir. 2007) (quoting *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 572–73 (6th Cir.2000)).[38]

If and when the plaintiff establishes a *prima facie* case, the burden shifts to the defendant to show some legitimate, non-discriminatory explanation for its action(s). *Edgar v. JAC Prod., Inc.*, 443 F.3d 501, 508 (6th Cir. 2006).

The Supreme Court has prudently cautioned, given the confusion sometimes discernible in this context, that "[t]he nature of the burden that shifts to the defendant should be understood in

---

[38] The Sixth Circuit has found that, in failure to promote claims:

> For Title VII purposes, the failure to promote is considered an adverse employment action. *Allen v. Mich. Dep't of Corr.*, 165 F.3d 405, 410 (6th Cir.1999).

> To establish a *prima facie* case in this context, the plaintiff must prove: (1) he is a member of a protected class; (2) he applied for and was qualified for a promotion; (3) he was considered for and denied the promotion; and (4) other employees of similar qualifications who are not members of the protected class received promotions. *Allen*, 165 F.3d at 410; *see also Betkerur v. Aultman Hosp. Ass'n*, 78 F.3d 1079, 1095 (6th Cir.1996). If the plaintiff meets this burden, the burden then shifts to the defendant to produce a legitimate, nondiscriminatory rationale for the adverse employment action. Upon so doing, the burden shifts back to the plaintiff to demonstrate that the proffered rationale is a pretext for discrimination. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L.Ed.2d 668 (1973).

*Gee v. Liebert Corp.*, 58 F. App'x 149, 153–54 (6th Cir. 2003).

light of the plaintiff's ultimate and intermediate burdens." *Texas Dep't of Cmty. Affs. v. Burdine*,

450 U.S. 248, 253 (1981). As the Sixth Circuit recently explained:

> Establishing a prima facie case is not difficult, and it creates a "presumption that the employer unlawfully discriminated against the employee." *Wixson v. Dowagiac Nursing Home*, 87 F.3d 164, 169 (6th Cir. 1996) (quoting [*Burdine*, 450 U.S. at 254]). This presumption does not shift the burden of proof, but only the burden of producing some evidence of permissible motive. *See Burdine*, 450 U.S. at 256 n.8, 101 S. Ct. 1089.

*Harris v. City of Akron, Ohio*, 836 F. App'x 415, 419 (6th Cir. 2020).

Thus, as to the existence of legitimate and non-discriminatory reasons for its action(s), the

defendant bears only the burden of production and not the burden of persuasion. *Garren v. CVS*

*Rx Servs., Inc.*, 482 F. Supp. 3d 705, 717 (E.D. Tenn. 2020) (citing *Anthony v. BTR Auto. Sealing*

*Sys., Inc.*, 339 F.3d 506, 515 (6th Cir. 2003)).[39] To meet that burden of mere production, "the

defendant need not *persuade* the court that it was actually motivated by the proffered reason[s]."

*Burdine*, 450 U.S. at 254 (emphasis added). Rather, "[i]t is sufficient if the defendant's evidence

*raises a genuine issue of fact* as to whether it discriminated against the plaintiff." *Id.* (emphasis

added).[40] To raise such genuine issue, "the defendant must clearly set forth, through the

---

[39] As suggested herein, the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains with the plaintiff at all times, throughout this burden shifting. *Burdine*, 450 U.S. at 253; *Anthony*, 339 F.3d at 515. The Court keeps this in mind, albeit with the caveat that on the instant Motion it does not sit as the trier of fact but instead concerns itself only with what a reasonable trier of fact could (or could not) find at a hypothetical trial based on the evidence presented on this Motion. Notably, in seeking to meet its burden, the plaintiff cannot rely purely on mere personal belief, conjecture and speculation, because they are insufficient to support an inference of discrimination. *Garren*, 482 F. Supp. 3d at 717.

[40] Given its use of the phrase "genuine issue of fact," *Burdine*'s description of the defendant's burden at the second stage could be misunderstood to apply only at the summary judgment stage. That is, because "genuine issue of material fact" is a key term of art uniquely applicable to motions for summary judgment, one might conclude that *Burdine* here was talking only about the burden a defendant bears at the second stage on the defendant's motion for summary judgment. But it was not. *Burdine* did not involve summary judgment at all; the case went to the Supreme Court after a (bench) trial. The Court has no reason to believe, though, that the standard is any different at the

introduction of admissible evidence, the reasons for the plaintiff's rejection[, which] must be legally sufficient to justify a judgment for the defendant." *Id.* at 255. "The defendant only has to present [evidence of] 'clear and reasonably specific' reasons that will 'frame the factual issue with sufficient clarity so that the plaintiff will have a full and fair opportunity to demonstrate pretext.'" *Harris*, 836 F. App'x at 419 (quoting *Burdine*, 450 U.S. at 258).[41]

_____

summary judgment stage; whether at summary judgment or at trial, the defendant's burden is to raise a genuine issue as to whether it had a valid (legitimate and non-discriminatory) reason.

    The reasons why it is enough for the defendant, even at trial, to merely "raise a genuine issue" as to whether it had a legitimate and non-discriminatory reason become clear once one considers the indirect-evidence framework as a whole and the reality that the ultimate burden of proving discriminatory intent lies with the plaintiff. Specifically, the first reason is that the defendant cannot have the burden of persuasion on the issue of whether its reason was valid rather than discriminatory, because (as just noted) the plaintiff has the burden on that issue. And the second reason is that the entire function (purpose) of the second stage—whether at the trial or summary-judgment stage—is merely to determine whether *there is a genuine issue* as to whether the defendant had a valid reason for its action(s). If the defendant fails to show that there is, then there is no genuine dispute that the defendant's action(s) were unlawfully discriminatory, and the plaintiff prevails. *See Burdine,* 450 U.S. at 254 ("Establishment of the prima facie case in effect creates a presumption that the employer unlawfully discriminated against the employee. If the trier of fact believes the plaintiff's evidence, and if the employer is silent in the face of the presumption, the court must enter judgment for the plaintiff because no issue of fact remains in the case."); *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993) (noting that if the plaintiff's claim is not defeated at the first stage, then the defendant-employer's "failure to introduce evidence of a nondiscriminatory reason will cause judgment to go against it."). But if the defendant does make this showing, then the issue of whether the defendant *actually* had a valid reason is hashed out at the third step, at which the plaintiff (bearing as she does the ultimate burden to show discriminatory intent) bears the burden of showing that a discriminatory reason, rather than the defendant's proffered valid reason, was the real reason for the defendant's action(s).

[41] The bracketed words added by the Court to this quote are significant; they denote the difference between a burden (a) merely to *articulate* (or state) some non-discriminatory reason(s) that supposedly motivated the employment decision, and (b) to *provide some evidence* that there was/were some non-discriminatory reason(s). It is true that some cases use language that seemingly suggests that the burden is the former. *E.g., Redlin*, 921 F.3d at 607*; Braithwaite v. Timken Co.*, 258 F.3d 488, 493 (6th Cir. 2001); *Petway v. Textron Aerostructures*, No. 93-6114, 1994 WL 70862 (6th Cir. Mar. 3, 1994) ("[the defendant] met its burden of articulating a legitimate non-discriminatory reason for [the plaintiff's] transfer by stating that she was selected for force reduction pursuant to its SFR procedure."). But both *Burdine* and *Harris* (which, as noted, was relying on *Burdine)* make clear that the employer meets its burden of production only if it presents not merely *some statement* of what the employer now says the reason was, but rather evidence of

If the defendant carries its burden to show a legitimate nondiscriminatory reason, then finally the burden shifts back to the plaintiff to show that the reason offered by the defendant is a pretext for discrimination. *McDonnell Douglas*, 411 U.S. at 802-04 (1973); *Burdine*, 450 U.S. at 255. This resulting burden is one of persuasion, and this burden of persuasion (as to pretext) at this stage "merges with the ultimate burden of persuading the court that she has been the victim of intentional discrimination." *Id.* at 256. In other words, once the burden has shifted back to the plaintiff, the plaintiff must show by a preponderance of the evidence[42] each of two components of pretext: that the defendant's reasons (i) were not its true reasons and (ii) were instead actually a pretext for discrimination. *Kirilenko-Ison v. Bd. of Educ. of Danville Indep. Sch.*, 974 F.3d 652, 661 (6th Cir. 2020). To defeat a summary judgment motion in such circumstances, the plaintiff must produce sufficient evidence from which the jury could reasonably reject the defendant's explanation and infer that the defendant intentionally discriminated against him. *Braithwaite v. Tinken Co.*, 258 F.3d 488, 493 (6th Cir. 2001).

An employee can show pretext "by offering evidence that (1) the employer's stated reason had no basis in fact, (2) the stated reason did not actually motivate the employer, or (3) the stated reason was insufficient to warrant the adverse employment action." *Loyd v. Saint Joseph Mercy Oakland*, 766 F.3d 580, 590 (6th Cir. 2014). "Whichever method the plaintiff employs, he always bears the burden of producing 'sufficient evidence from which the jury could reasonably reject [the defendants'] explanation and infer that the defendants intentionally discriminated against

---

what the reason actually was at the time in question. So although this may indeed be a burden of articulating a reason, it is a burden of articulating a reason supported by *evidence*.

[42] The "preponderance of the evidence" standard applicable here is the trial standard. At the summary judgment stage, as suggested above, the standard is modified, such that the question becomes whether a reasonable jury *could* make the required finding by a preponderance of the evidence.

him.'" *Clark v. Walgreen Co.*, 424 F. App'x 467, 474 (6th Cir. 2011) (quoting *Johnson v. Kroger Co.*, 319 F.3d 858, 866 (6th Cir.2003)).

"The three-part test need not be applied rigidly. Rather, '[p]retext is a commonsense inquiry: did the employer fire the employee for the stated reason or not?'" *Blizzard v. Marion Tech. Coll.*, 698 F.3d 275, 285 (6th Cir. 2012) (quoting *Chen v. Dow Chem. Co.*, 580 F.3d 394, 400 n.4 (6th Cir. 2009)). "Ultimately the plaintiff must produce 'sufficient evidence from which a jury could reasonably reject [the employer's] explanation of why it fired [or failed to rehire] her.'" *Brown v. Kelsey-Hayes Co.*, 814 F. App'x 72, 80 (6th Cir. 2020) (quoting *Chen*, 580 F.3d at 400). The plaintiff "must meet this evidentiary burden by a preponderance of the evidence." *Id.* (citation omitted). If the plaintiff can do so, he meets his burden of showing that the employer's stated reason for the allegedly discriminatory reason was not its true reason.

But something more is required of the plaintiff. That is, the plaintiff must address the second component of pretext, *i.e.*, that the actual reason was discriminatory. That is, as indicated above, "[t]o demonstrate pretext, a plaintiff must show both that the employer's proffered reason was not the real reason for its action, and that the employer's real reason was unlawful."[43] *EEOC v. Ford Motor Co.*, 782 F.3d 753, 767 (6th Cir. 2015) (citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993),[44] and *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 148

---

[43] The required second component seems to coalesce with the required overall showing that the plaintiff must make to meet his or her overall burden of showing unlawful discrimination. Presumably, this is what the Supreme Court had in mind when it stated that the plaintiff's burden as to pretext "merges" with the plaintiff's overarching burden as to the discrimination claim as a whole. *Burdine*, 450 U.S. at 256.

[44] One might reasonably ask whether *St. Mary's*, which as noted in *Ford Motor Co.* required the plaintiff to show both components, effectively overruled *Burdine* in one respect. Specifically, this aspect of *St. Mary's* seems in tension with *Burdine*'s statement that the plaintiff may meet its burden of persuasion as to pretext "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered

(2000)).[45] In other words, if the burden has shifted back to the plaintiff, the plaintiff's trial burden would be to show by a preponderance of the evidence that the defendant's reasons were not its true reasons and were instead actually a pretext for retaliation. *Kirilenko-Ison*, 974 F.3d at 661. "To avoid summary judgment, then, the [plaintiff] must present evidence from which a reasonable jury could find that poor performance was not the real reason that [the defendant] terminated [the plaintiff], and that unlawful retaliation in fact was." *Ford Motor Co.*, 782 F.3d at 767. In some cases, the evidence that the defendant's proffered reason was not the proffered reason will serve equally as evidence that the real reason was discriminatory, and vice versa. After all, evidence may suggest that the defendant's proffered (non-discriminatory) reason was not the real reason precisely because it suggests that the real reason was discriminatory; likewise, evidence may suggest that the defendant's proffered (non-discriminatory) reason was discriminatory precisely because it suggests that (suspiciously) the proffered reason was not the real reason. But under Sixth Circuit law, the Court must be mindful to require evidence of both kinds, even if it turns out to all be the same evidence.

---

explanation is unworthy of credence." *Id.* at 256. The dissent in *St. Mary's* certainly saw the tension. But as far as the undersigned can tell, *Burdine* has never been considered to have been overruled in any respect, and certainly neither the Supreme Court nor the Sixth Circuit has shown any compunction about citing *Burdine* (at least parts of *Burdine* other than the statement apparently displaced by *St. Mary's* as noted above) in the aftermath of *St. Mary's*. The Court is confident at the very least that the aspects of *Burdine* upon which the Court relies remain good law after *St. Mary's*.

[45] One might ask why it is not enough to speak simply in terms of the requirement to show that the real reason was retaliation (the second component of pretext) without mentioning a separate requirement to show that the real reason was not the (non-retaliatory) reason proffered by Defendant (the first component of pretext). After all, the second seems necessarily subsumed in the first. But the Sixth Circuit has articulated these as separate requirements that each must be satisfied, and so the Court will proceed accordingly.

It is worth summarizing in some detail how all of these (variously shifting and conditional) requirements apply in the *summary judgment context* in particular, once the above-referenced principles of summary judgment are applied to the unique framework of indirect-evidence cases under *McDonnell Douglas.* As one court put it, addressing Title VII claims of discrimination, "[a] defendant's summary judgment motion slightly modifies the order of these [*McDonnell Douglas*] showings" because these showings are stated in terms of the trial context (where the plaintiff bears the initial and ultimate burden of proof) but the defendant-movant (consistent with the discussion above) bears the initial burden under Rule 56. *Sherman v. Fountain Valley Police Dep't*, No. SACV172217JVSDFMX, 2019 WL 4238873, at *7 (C.D. Cal. Apr. 2, 2019) (internal quotation marks omitted).

The Sixth Circuit has spoken very helpfully on this topic:

> [When a] discrimination plaintiff bases his case on indirect evidence (i.e., evidence requiring inferences to reach the conclusion that the defendant discriminated against the plaintiff), we apply the burden-shifting framework first set forth in *McDonnell Douglas v. Green,* 411 U.S. 792, 802–05, 93 S. Ct. 1817, 36 L.Ed.2d 668 (1973). *Rowan,* 360 F.3d at 547; *Town v. Mich. Bell Tel. Co.,* 455 Mich. 688, 568 N.W.2d 64, 67–68 (1997). "On a motion for summary judgment, a district court considers whether there is sufficient evidence to create a genuine dispute at each stage of the *McDonnell Douglas* inquiry." *Cline v. Catholic Diocese of Toledo,* 206 F.3d 651, 661 (6th Cir.2000) (applying the *McDonnell Douglas* framework to a sex-discrimination claim). Thus, the plaintiff must first submit evidence from which a reasonable jury could conclude that he or she established a prima facie case of discrimination. *Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1186 (6th Cir.1996) (applying the *McDonnell Douglas* framework to a disability-discrimination claim). The defendant must then offer admissible evidence of a legitimate, nondiscriminatory reason for its action. *Id.* If the defendant does so, the plaintiff must identify evidence from which a reasonable jury could conclude that the proffered reason is actually a pretext for unlawful discrimination. *Id.* Although the burdens of production shift, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Tex. Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 253, 101 S. Ct. 1089, 67 L.Ed.2d 207 (1981).

*Blair v. Henry Filters, Inc.*, 505 F.3d 517, 524 (6th Cir. 2007), *overruled on other grounds*, *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 179 (2009).[46]

In the Court's view, what the summary judgment analysis boils down to, stated as concisely as possible (which, alas, is not particularly concisely), is set forth in the following paragraph.

To obtain summary judgment on Title VII or THRA claims grounded exclusively on the so-called "indirect-evidence" theory, the defendant must either (i) show that there is no genuine issue of material fact as to at least one of the elements of the plaintiff's *prima facie* case (such that the defendant necessarily is entitled to judgment as a matter of law based on the absence of that element); *or*, failing that, (ii) (a) make an evidentiary showing[47] that there was a legitimate, nondiscriminatory reason for its alleged actions and then (b) show that there is no genuine issue of material fact as to pretext (such that the defendant necessarily is entitled to judgment as a matter of law based on the absence of pretext). On the other hand, the plaintiff will avoid summary judgment if : (i) either (a) the defendant fails to meet its initial burden to show the lack of a genuine issue of material fact as to any or more elements of the plaintiff's indirect-evidence *prima facie* case, *or* (b) the plaintiff presents sufficient evidence to demonstrate a genuine issue of material

---

[46] Although *Blair* states that "the plaintiff must first submit evidence from which a reasonable jury could conclude that he or she established a prima facie case of discrimination[,]" 505 F.3d at 524, this is actually true only if the defendant-movant met its initial burden of showing the absence of sufficient evidence for a jury to reach such a conclusion. *See Pittman v. Experian Information Solutions, Inc.*, 901 F.3d 619, 627-28 (6th Cir. 2018) ("The moving party must demonstrate the 'basis for its motion, and identify[ ] those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.'" (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986))).

[47] To be clear, the requirement here is not merely to *articulate* a legitimate reason, but also (as discussed below) to *present evidence* that the articulated legitimate reason was in fact the reason.

fact as to any element(s) of such *prima facie* case as to which the defendant met its initial burden to show the lack of a genuine issue of material fact; and (ii) either (a) the defendant cannot make an evidentiary showing of a legitimate, nondiscriminatory reason for its alleged actions, or, if the defendant can make such a showing, (b) the plaintiff demonstrates that there is a genuine issue of material fact as to pretext.[48]

As an alternative to indirect evidence, a plaintiff may seek to establish its case via direct evidence. "[D]irect evidence is evidence which, if believed, 'requires the conclusion that unlawful discrimination was at least a motivating factor.'" *Bartlik v. U.S. Dep't of Labor*, 73 F.3d 100, 103 n.5 (6th Cir. 1996) (quoting *Talley v. Bravo Pitino Rest., Ltd.*, 61 F.3d 1241, 1248 (6th Cir. 1995)). The Court concludes that a defendant-movant does not bear the burden of showing preliminarily the absence of direct evidence,[49] and Plaintiff does not suggest that there is direct evidence of discrimination in this case. Therefore, the Court will focus its discussion on indirect evidence.

### 2. *Element three: adverse employment action*

Plaintiff alleges three adverse employment actions: 1) Defendant "[gave Plaintiff] and other similarly situated individuals significantly more credit hours to teach in comparison to professors in his department who were born in America"; 2) Defendant "[gave Plaintiff] and other similarly situated individuals less pay in comparison to professors in his department who were born in America"; and 3) "Plaintiff was not even interviewed for his Department Chair position

---

[48] As indicated below, courts' references to a plaintiff's (conditional) requirement to show "pretext" is actually a (conditional) requirement to show not just pretext (*i.e.*, that the claimed reason was provided to conceal the real reason) but also to show that the real reason was of an unlawful, discriminatory nature.

[49] Despite substantial searching over time, the Court has been unable to find any cases in which the court made it a point to ensure that the defendant-movant met an initial burden to show a likely absence of direct evidence before looking to see whether the plaintiff could meet that burden by pointing to some direct evidence; instead, from what their opinions indicate, courts generally start by asking whether the plaintiff has identified anything that constitutes direct evidence.

despite having significantly better qualifications than other individuals who applied and the African-American professor who received the position." (Doc. No. 1 at 5).[50]

a. Failure to promote

"For purposes of Title VII, a failure to promote is an adverse employment action." *Allen v. Michigan Dep't of Corr.*, 165 F.3d 405, 410 (6th Cir. 1999) (*citing Hale v. Cuyahoga County Welfare Dep't*, 891 F.2d 604, 606 (6th Cir.1989)). Defendant does not appear to dispute that a failure to promote, if properly alleged, constitutes an adverse employment action.

"In order to establish a prima facie claim of [] discrimination based on a failure to promote, a plaintiff must demonstrate that: (1) he is a member of a protected class; (2) he applied and was qualified for a promotion; (3) he was considered for and denied the promotion; and (4) other employees of similar qualifications who were not members of the protected class received promotions." *Id*. Defendant argues that Plaintiff has failed to establish the second and fourth elements.

i. Qualified for a promotion (element two of *prima facie* indirect-evidence case based on failure to promote)

Defendant argues that Plaintiff was not qualified for the promotion, because he had no previous experience as a Department Chair or experience in an administrative position. (Doc. No. 27 at 9). Plaintiff argues that a genuine issue of material fact exists regarding whether he was qualified for the position of Department Chair. Plaintiff asserts that contrary to Defendant's suggestion, previous experience as a Department Chair or in an administrative position was not required, so Plaintiff's lack of such experience would not render him unqualified. (Doc. No. 31 at

---

[50] Defendant acknowledges only the third alleged adverse employment action (regarding Plaintiff's failure to receive a promotion to Department Chair) and makes no mention of the first two alleged adverse employment actions. Defendant has thus failed to make any showing that there is no genuine issue of material fact as to these alleged adverse employment actions.

12). Plaintiff also argues that the candidate who ultimately was hired did not (unlike Plaintiff) have any grants on his resume and thus was unqualified for the position just as Defendant claims Plaintiff was. (*Id.* at 12).

The Sixth Circuit has explained what is required for a plaintiff to satisfy the qualifications element of the *prima facie* test:

> At the prima facie stage, a court should focus on a plaintiff's objective qualifications to determine whether he or she is qualified for the relevant job. *See Aka v. Washington Hosp. Ctr.*, 156 F.3d 1284, 1298 (D.C. Cir. 1998) (en banc) (noting that "courts traditionally treat explanations that rely heavily on subjective considerations with caution," and that "an employer's asserted strong reliance on subjective feelings about the candidates may mask discrimination"); *MacDonald v. E. Wyo. Mental Health Ctr.*, 941 F.2d 1115, 1121 (10th Cir. 1991) (holding that a plaintiff can show that she is qualified by presenting "credible evidence that she continued to possess the objective qualifications she held when she was hired") (emphasis added). The prima facie burden of showing that a plaintiff is qualified can therefore be met by presenting credible evidence that his or her qualifications are at least equivalent to the minimum objective criteria required for employment in the relevant field. Although the specific qualifications will vary depending on the job in question, the inquiry should focus on criteria such as the plaintiff's education, experience in the relevant industry, and demonstrated possession of the required general skills.

*Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 575–76 (6th Cir. 2003); *see also George v. Youngstown State Univ.*, 966 F.3d 446, 464 (6th Cir. 2020). The Sixth Circuit has explained that the relevant employer can help identify what these qualifications are:

> [A]s the one who creates the position in question, the employer largely enjoys the right to decide the qualifications it prefers in one who holds the position and, it follows, whether an applicant lacks the necessary knowledge or experience. *See Wexler*, 317 F.3d at 575; *Alexander*, 576 F.3d at 563–64; *see, e.g.*, *Romano v. Hudson City Sch. Dist.*, 772 F. App'x 258, 265 (6th Cir. 2019) (holding that the plaintiff failed to establish a prima facie case because she lacked a required credential for the job); *Brown v. City of Cleveland*, 294 F. App'x 226, 231–32 (6th Cir. 2008) (same). And given an employer's superior knowledge of its workplace and industry, the employer's stated job requirements will typically be the objective criteria by which we measure a fail-to-hire claim. *See George*, 966 F.3d at 464–65 (quoting *Wexler*, 317 F.3d at 576) (acknowledging that "the specific qualifications will vary depending on the job in question" and plaintiff must demonstrate "possession of the required general skills"); *Alexander*,

576 F.3d at 564 (holding that a job description amounts to evidence of the minimum job qualifications). Who, after all, better understands the relevant field and the corresponding skills necessary to succeed than the employer? Not a federal court, one reason why we do not "substitute [our] judgment for that of management" when it comes to business decisions like setting necessary job qualifications. *Hedrick v. W. Reserve Care Sys.*, 355 F.3d 444, 462 (6th Cir. 2004) ("[I]t is inappropriate for the judiciary to substitute its judgment for that of management." (quoting *Smith v. Leggett Wire Co.*, 220 F.3d 752, 763 (6th Cir. 2000))).

*Flowers v. WestRock Servs., Inc.*, 979 F.3d 1127, 1131–32 (6th Cir. 2020). Additionally, the Sixth Circuit has indicated that if a defendant does not uniformly apply its criteria for a position, the "disparate application of the criteria implies that [the defendant] could have relaxed intentionally its requirement" for certain applications, meaning that a plaintiff has shown a genuine dispute of material fact as to whether they are qualified. *Upshaw v. Ford Motor Co.*, 576 F.3d 576, 585 (6th Cir. 2009); *see also Grice v. Jackson-Madison Cty. Gen. Hosp. Dist.,* 981 F. Supp. 2d 719, 734 (W.D. Tenn. 2013), *aff'd sub nom. Grice v. Jackson-Madison Cty. Gen. Hosp.*, 570 F. App'x 539 (6th Cir. 2014).

As noted in the Factual Background section, the Job Announcement stated under the headings "Minimum Qualifications/Experience" and "Required Education—Experience—Skill Minimum Qualification":

> The successful candidate must have earned a doctorate (or the foreign equivalent or its equivalent in training, ability, and/or experience) in Mathematics or a closely related field and have sufficient experience and achievement to qualify for the rank of Professor. The successful candidate will have a record of scholarship and research that includes peer-reviewed publications and securing external funding. The candidate should provide evidence of effective leadership experience, exceptional communication and interpersonal skills, and an ability to work productively with faculty and students from diverse backgrounds.

(Doc. No. 29-16 at 3). In this description, there is no reference to the (alleged) qualifications that Defendant relies on in its briefing, namely that a candidate have previous experience as a Department Chair or in an administrative position. (Doc. No. 27 at 9). The Job Announcement

instead contains a much more general requirement that a successful candidate have "evidence of effective leadership experience." And Defendant cites the Court to no evidence outside of the Job Announcement for the proposition that what it asserts was a qualification for the position.[51] Defendant thus has failed to show that there is no genuine issue of material fact as to this element of the Plaintiff's indirect-evidence *prima facie* case; it never made the preliminary showing of such as necessary to shift the burden to Plaintiff on this issue.

Even if Defendant had shifted the burden, Plaintiff would have satisfied it. Plaintiff has shown that the requirements in the Job Announcement were not applied consistently to all candidates. A professor at the school testified in his deposition that the minimum qualifications for the Department Chair position included having a doctorate (or equivalent) in mathematics or a closely related field and a record of securing external funding, commenting that he was "not sure how we could have overlooked the fact that [Dr. McMurray] did not have any—had not received any funding." (Doc. No. 31-6 at 6). Additionally, an individual who works in the mathematics department (and served multiple times as an interim department chair) indicated that another finalist for the position had a degree in agricultural sciences, which made him unqualified for the position, and that she was "shocked" that an individual with such background was included as a finalist. (Doc. No. 31-7 at 10-11). Therefore, the Court finds that Plaintiff has pointed to a genuine dispute of material fact regarding whether he was qualified for the position. Plaintiff has shown

---

[51] It is not the Court's job "to root through the record not unlike a pig in search of truffles to uncover any grain of evidence that might support the position of a party that chose to otherwise sit on its hands." *Penn-Daniels, LLC v. Daniels*, No. 07-1282, 2010 WL 431888, at *3 (C.D. Ill. Jan. 28, 2010) (citing *Casna v. City of Loves Park*, 574 F.3d 420, 424 (7th Cir. 2009)); *see also Emerson v. Norvartis Pharm. Corp.*, 446 F. App'x 733, 736 (6th Cir. 2011) (noting that "judges are not like pigs, hunting for truffles" that might be buried in the record).

not only that he met the qualifications listed in the employer's Job Announcement, but also that the requirements were not applied consistently to all candidates.

Therefore, the Court finds that Plaintiff has shown a genuine dispute of material fact regarding whether he was qualified for the position.

> ii. Similarly situated non-protected class members received promotion (element four of indirect evidence *prima facie* case for failure to promote)[52]

Defendant argues that Plaintiff cannot show the fourth element of the indirect-evidence *prima facie* case, because an African American individual (an individual who is also in a protected class) received the position. (Doc. No. 27 at 9).

In so arguing, Defendant has entirely misstated the requirement of element four of the *prima facie* case. Plaintiff need only show that someone with similar qualifications and *outside of his protected class* got the promotion, and not also that the person who got the promotion was not in any protected class. *See Brown v. Oakland Cty.*, No. 14-CV-13159, 2015 WL 5215840, at *7 (E.D. Mich. Sept. 4, 2015) (explaining that a Latino individual could point to an African American individual as "a member of a different protected class"); *see also Arendale v. City of Memphis*, 519 F.3d 587, 603 (6th Cir. 2008) ("[T]o satisfy the fourth prong, Plaintiff must show that the City treated differently similarly situated employees of a different race."); *Tippie v. Tennessee Dep't of Revenue*, No. 10-2702-STA-DKV, 2012 WL 1900656, at *8 (W.D. Tenn. May 24, 2012) ("Plaintiff has failed to make out the fourth element of her prima facie case: she has not shown that any individuals of another race or gender were treated differently."). As an African American individual, the person who received the promotion was in *a* protected class (African American

---

[52] This argument was made by Defendant in connection with Plaintiff's Title VII and Title VI claims. Plaintiff addressed this argument in his section on Title VI.

individuals), but one different from the protected class Plaintiff was in (Chilean individuals). Thus, not only are the protected classes of Plaintiff and the African American individual different, but even the *kinds* of protected classes Defendant has referred to here (race and national origin) are different.

Therefore, the Court finds that Defendant has failed to meet its initial burden of showing an absence of evidence that Plaintiff was replaced by an individual outside of his protected class.

Defendant makes no other challenge to Plaintiff's indirect-evidence *prima facie* case. It thus has failed to prevail at the first stage of the *McDonnell Douglas* analysis. Defendant has not asserted a legitimate, nondiscriminatory reason for not promoting Plaintiff and thus cannot prevail at later stages of the *McDonnell Douglas* analysis. Defendant has failed to show that there is no genuine issue of material fact as to Plaintiff's claim for national-origin discrimination under Title VII; thus, this claim survives the Motion.

H.    **Title VI**

In support of its Motion, Defendant argues, "Given the material facts, Plaintiff fails to establish a prima facie case against Defendant for a Title VI claim of race, national origin and/or color discrimination." (Doc. No. 27 at 12). However, regarding Plaintiff's Title VI claim, Defendant argues only that Plaintiff failed to establish an indirect-evidence *prima facie* case based on a failure to promote. Plaintiff's Title VI failure-to-promote claim, as discussed above, is time-barred. But (also as discussed above) Plaintiff also brings *other* Title VI claims, as to which Defendant sets forth no argument on the merits. Thus, the Court will deny summary judgment to Defendant on Plaintiff's Title VI claims other than the Title VI failure-to-promote claim

I.    **§ 1981 (race)**[53]

The Sixth Circuit has explained that:

> In order to establish a claim for racial discrimination under section 1981, a plaintiff must plead and prove that (1) he belongs to an identifiable class of persons who are subject to discrimination based on their race; (2) the defendant intended to discriminate against him on the basis of race; and (3) the defendant's discriminatory conduct abridged a right enumerated in section 1981(a). *See Christian*, 252 F.3d at 871–72. As the district court observed, the "intent" element of the claim can be established either by direct evidence or inferentially. *Blalock v. Metals Trades, Inc.*, 775 F.2d 703, 707 (6th Cir.1985) (explaining that the direct and circumstantial means of proof are two "different evidentiary paths by which to resolve the ultimate issue of defendant's discriminatory intent"). When a claimant seeks to prove intentional discrimination inferentially in a section 1981 case, federal courts follow the burden-shifting framework that the Supreme Court has prescribed for analogous civil rights cases described in *McDonnell Douglas v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981). *See Patterson v. McLean Credit Union*, 491 U.S. 164, 186, 109 S. Ct. 2363, 105 L.Ed.2d 132 (1989), *overruled on other grounds by* Pub. L. 102–166, § 101 (noting that "this scheme of proof, structured as a sensible, orderly way to evaluate the evidence in light of common experience as it bears on the critical question of discrimination ... should apply to claims of racial discrimination under § 1981") (internal quotes and citation omitted); *Noble v. Brinker Int'l, Inc.*, 391 F.3d 715, 720 (6th Cir. 2004) (holding that "[t]he elements of [a] prima facie case as well as the allocations of the burden of proof are the same for employment claims stemming from Title VII and § 1981") (quoting *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 573 n. 5 (6th Cir. 2000)).

---

[53] As indicated above, a cognizable § 1981 claim is necessarily grounded in the plaintiff's race, and so Plaintiff's § 1981 claim is cognizable only to the extent it is based on his race (as opposed to his national origin and ethnicity). Though it may not be immediately apparent that "Latino" or "Hispanic" is a protected *race* (as opposed to a protected ethnicity or place of national origin), neither party seems to dispute this characterization. Additionally, many courts have found that a Latino or Hispanic individual can bring a race discrimination claim, often referring to such individuals with the words "Latino" and "Hispanic" interchangeably. *E.g.*, *Guzman v. Concavage Marine Constr. Inc.*, 176 F. Supp. 3d 330, 334 (S.D.N.Y. 2016) ("As Defendants rightly acknowledge, discrimination against Latinos may be actionable under § 1981."); *Escalera v. Bard Med.*, 373 F. Supp. 3d 793, 801 (W.D. Ky. 2019), *case dismissed*, No. 19-5383, 2019 WL 3226309 (6th Cir. July 2, 2019) (not raising issue of plaintiff identifying as Latino, despite no such option existing on the EEOC form for race claim); *Brown v. Oakland Cty.*, No. 14-CV-13159, 2015 WL 5215840, at *1 (E.D. Mich. Sept. 4, 2015) (not raising issue and describing plaintiff as Latino when discussing race claim). The undersigned suggests caution in using the terms interchangeably because, to the extent one term references Latin America and the other term references Spain or Spanish speaking (as opposed to, for example, Brazil and Portuguese speaking) a person can be Latino/a without being Hispanic, and vice versa.

*Amini v. Oberlin Coll.*, 440 F.3d 350, 358 (6th Cir. 2006).

Typically, courts conduct their analyses of a § 1981 claim and a Title VII claim concurrently, as they are analyzed under the same framework. *Aldridge v. City of Memphis*, No. 05-2966-STA-DKV, 2008 WL 2999557, at *3 (W.D. Tenn. July 31, 2008), *aff'd*, 404 F. App'x 29 (6th Cir. 2010); *Frazier v. Phillip's Masonry Grp., Inc.*, No. 1:09-0022, 2010 WL 1882123, at *6 (M.D. Tenn. May 11, 2010); *Pendleton v. Bob Frensley Chrysler Jeep Dodge Ram, Inc.*, No. 3:14 C 02325, 2016 WL 2927983, at **3, 8, 10 (M.D. Tenn. May 19, 2016). However, the Court here provides its analysis of the § 1981 claim separately from the above Title VII analysis both because the parties have briefed it separately and because the only § 1981 claim is based on race, and the only remaining Title VII claim is based on national origin.

Defendant argues that Plaintiff cannot prevail on his § 1981 claim because (according to Defendant) in his deposition Plaintiff merely provided his subjective belief that Defendant was motivated to discriminate against him (on the basis of race) because he was the only Hispanic in the department, which (again according to Defendant) is not enough to show Defendant's intent to discriminate against Plaintiff. (Doc. No. 27 at 13). Defendant has a point. When asked about why Defendant would be motivated to discriminate against him, Plaintiff responded that it was based on "[his] belief, because [he is] the only Hispanic professor in the department; perhaps the only one in the college." (Doc. No. 31-5 at 13). But the fact that Plaintiff (according to him) *stands alone* in this racial class does not count for more than a scintilla of evidence of intent to discriminate against him *because he was in* that racial class, and because this testimony tends to suggest that Plaintiff lacks any *other* evidence (or facts) suggesting that Defendant had discriminatory intent. Plaintiff's testimony here tends to show preliminarily that he lacks adequate

evidence of Defendant's intent to discriminate against him based on race.[54] This reality is only enhanced by Plaintiff's response (found at Doc. No. 31-9 at ¶ 10) to Defendant's assertion in its Statement of Undisputed Facts that Plaintiff "believes that [Defendant] is motivated to discriminate against him because he is the only Hispanic in the department, although [Plaintiff] does not know why that would motivate [Defendant] to discriminate against him." This response suggests that Plaintiff lacks any competent evidence to raise a genuine issue of material fact as to whether Defendant was animose against Plaintiff based on his race.[55]

Therefore, the Court finds that Defendant has shifted the burden to Plaintiff to show sufficient evidence that Defendant intended to discriminate against him on the basis of race.

---

[54] Defendant also noted that Plaintiff received promotions, raises, and tenure, indicating that it did not intend to discriminate against him. (Doc. No. 27 at 13). These undisputed facts regarding advances made by Plaintiff in his employment with Defendant tend to show preliminarily (subject to Plaintiff's rebuttal, of course) an absence of an intent to discriminate against Plaintiff. But unlike Plaintiff's testimony suggesting that Plaintiff lacks any real evidence of discriminatory intent, these facts do not necessarily tend to suggest that *Plaintiff lacks countervailing evidence* sufficient to reach a jury on the issue of discriminatory intent, which is really what matters when a defendant moves for summary judgment on a plaintiff's claims; the question is not so much whether the defendant can point to evidence (or undisputed facts) suggesting that the jury should find in its favor rather than the plaintiff's, but rather whether the defendant can show that the plaintiff lacks evidence sufficient even to reach a jury at all. The facts Defendant points to here serve more to show why it should prevail in front of a jury than to show that Plaintiff lacks evidence even to reach a jury. That said, these facts certainly do not hurt Defendant in its bid to shift the summary-judgment burden to Plaintiff on the issue of discriminatory intent.

[55] Specifically, in response to this assertion of Defendant, Plaintiff states:

> Denied. [Plaintiff] testified that he has been subjected to things no one else in the department has been. Also, per his Affidavit, he is "confident that the hostile work environment and retaliation that [he] suffered from is a result of my Chilean national origin and not being born in the United States, and because I complained about being discriminated against."

(Doc. No. 31-9 at ¶ 10). As the Court has previously discussed, the Court cannot consider Plaintiff's rank speculation and beliefs as grounds for raising a genuine dispute of material fact in response to a motion for summary judgment. Moreover, Plaintiff here speculates only that Defendant was animose against Plaintiff based on his *national origin*, not his race.

As indicated above, to make this showing, Plaintiff can either present direct evidence of discriminatory intent, establish an indirect-evidence case under *McDonnell Douglas*, or both.

Plaintiff's entire response regarding the § 1981 claim was as follows:

> Defendant argues that Plaintiff's allegations of discrimination and retaliation are completely subjective and that [Defendant] TSU would not have hired [Plaintiff] or promoted him if it had intended to discriminate against him. Defendant then argues that [Plaintiff's] claim is based on "mere conjecture or speculation." However, a significant number of facts support this belief (see Complaint and Jara Affidavit) that the hostile work environment and retaliation he suffered from for years is a result of two things: 1) his Chilean national origin and not being born in the United Sates, and 2) lodging numerous complaints about being discriminated and retaliated against. Notably, nearly all of the issues in his complaint arose *after* he received a new Department Chair and *after* he lodged multiple complaints about being discriminated and retaliated against. This, as well as the aforementioned facts, are sufficient to create significant issues of material fact with regards to intent. As such, his Section § 1981 Claims should remain.

(Doc. No. 31 at 16-17). Plaintiff does not mention or reference his race claim under § 1981. And he certainly does not indicate any instances, or evidence, of race discrimination. Thus, the Court finds that he has failed to meet his resulting burden to show a genuine issue as to the existence of Defendant's intent to discriminate against him on the basis of *race*. Alternatively, the Court finds that he has abandoned his race claim under § 1981. *See Brown v. VHS of Michigan, Inc.*, 545 F. App'x 368, 372 (6th Cir. 2013) ("This Court's jurisprudence on abandonment of claims is clear: a plaintiff is deemed to have abandoned a claim when a plaintiff fails to address it in response to a motion for summary judgment."). Accordingly, Defendant is entitled to summary judgment on Plaintiff's § 1981 claim, not only to the extent it is based (improperly) on his national origin and ethnicity, but also to the extent that it is based (as any cognizable § 1981 claim must be) on his race.

## CONCLUSION

Therefore, for the reasons discussed herein, the Court will grant in part and deny in part the Motion. Specifically, the Court will:

(a) grant the Motion as to Count II and Count IV;

(b) grant the Motion in part and deny the Motion in part as to Count III;[56]

(c) deny the Motion as to Count I.

An appropriate order will be entered.

_Eli Richardson_
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE

---

[56] Plaintiff's Title VI claims will survive aside from Plaintiff's Title VI claim for general retaliation based on the discrete adverse act of a failure to promote, on which summary judgment will be granted on the basis of limitations.